Commonwealth ex rel. Corbin, Appellant, *v.*
Myers.

Argued September 30, 1966. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROB-
ERTS, JJ.

*Gerald E. Ruth,* for appellant.

*John T. Miller,* First Assistant District Attorney,
with him *John F. Rauhauser, Jr.,* District Attorney,
for appellee.

OPINION BY MR. JUSTICE JONES, November 15, 1966:
On January 5, 1951, Robert Corbin was convicted
by a jury of murder in the first degree and punish-

ment was fixed at life imprisonment. Sentence was imposed on June 25, 1951, in accordance with the jury's verdict and no appeal from the judgment of sentence was taken.

On November 30, 1964, Corbin instituted a habeas corpus action which the Court of Common Pleas of York County dismissed without hearing. On appeal to this Court, because, at the murder trial, the court had failed to conduct an independent hearing upon the issue of the voluntariness of Corbin's statements, as mandated by *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964), we remanded the matter for a hearing where, in accordance with the requirements of due process, the voluntariness of Corbin's oral statements offered at the trial could be fully evaluated and determined. See: *Commonwealth ex rel. Corbin v. Myers,* 419 Pa. 139, 213 A. 2d 356 (1965).[1] On remand, the court below held that Corbin's statements were voluntarily made. The propriety of that ruling is now before us.

Corbin was tried and convicted for the April 14, 1950 murder of Anna M. Bittle whose body was found in Codorus Creek under the Beaver St. Bridge in York, Pa. The murder occurred in the presence of Genevieve Heistand, a companion of Corbin.

On May 23, 1950, Corbin was arrested and committed to jail on a charge unrelated to the murder. On May 26, 1950, he was taken to York City Hall where he was questioned on matters unrelated to the murder from 10:25 a.m. till 12 noon. That afternoon he was questioned about the Bittle murder from 3:25 p.m. to 5:30 p.m. and from 9:00 p.m. to 11:00 p.m. During

[1] We note that *Jackson v. Denno,* supra, is retrospective in application (*Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965), whereas *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964) and *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966) are not: *Johnson v. New Jersey,* 384 U.S. 719, 86 S. Ct. 1772 (1966) ; *Commonwealth v. Negri,* 419 Pa. 117, 213 A. 2d 670 (1965) ).

the afternoon and evening interrogation Corbin stated he had spent the entire night of April 14 with Genevieve Heistand, that they crossed the Beaver St. Bridge, and that he had no knowledge of a woman's body being found in Codorus Creek. On June 1, 1950, Corbin was released from custody.

On July 27, 1950, Corbin was again taken into custody in connection with a charge unrelated to the murder. On July 29, 1950, he was taken to the State Police Barracks in York and from there to State Police Barracks in Harrisburg where he repeated his original statements concerning his activities on the night of April 14. He was then returned to the York County Jail where he was confronted by Genevieve Heistand who accused him of robbing, killing and disposing of the body of Anna Bittle. Corbin's response was "Jenny, I didn't tell on you, why did you tell on me?" Corbin was released from custody that same day. He voluntarily appeared for questioning about the murder on August 25, 1950 and was released that same day. On the following September 14, 1950, he was arrested for murder.

The issue before us is whether the statements made by Corbin on May 26, 1950, and July 29, 1950, were freely and voluntarily made, were the product of his rational intellect and free will, and were not obtained by any mental or physical coercion or duress. On remand, we repeat, the lower court found affirmatively. We agree.

While the failure to warn accused persons of their rights, or the failure to grant them access to outside assistance are factors tending to show the involuntariness of a confession (*Johnson v. New Jersey,* supra; *Haynes v. Washington,* 373 U.S. 503, 83 S. Ct. 1336 (1963); *Spano v. New York,* 360 U.S. 315, 79 S. Ct. 1202 (1959)), still the issue of determining voluntariness depends largely upon the facts of the particular

case, i.e., the total combination of circumstances (*Reck v. Pate,* 367 U.S. 433, 81 S. Ct. 1541 (1961); *Commonwealth v. Brown,* 309 Pa. 515, 164 A. 726 (1933)).

The most that can be said of Corbin's statements is that an unfavorable inference, which reflected unfavorably on the presumption of Corbin's innocence, could be drawn from his spontaneous statement on July 29, 1950 "Jenny, I didn't tell on you, why did you tell on me?" (a statement which he now denies ever making).[2] The most compelling circumstances Corbin can present to show that his statements were involuntary are a delayed trip to the bathroom, a light shining in his face, questioning in a room on the walls of which were pictures of people who had been killed, and interrogation concerning the murder—all of which occurred on July 29, 1950. Corbin admits he was not abused or mistreated on May 26, 1950. After viewing all the facts in a light most favorable to the Commonwealth we are convinced of the propriety of the lower court's finding.

A review of this record convinces us that the statement of Corbin was given voluntarily and freely and under circumstances which negative the presence of an "interrogation environment" which, in any manner, subjugated Corbin to the will of the interrogating officers.

Order affirmed.

[2] The majority opinion in *Miranda,* 384 U.S. 436, 86 S. Ct. 1602, 1629, 1630 states: "No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory'. . . . Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."