Commonwealth, Appellant, *v.* Taper.

72

Submitted September 27, 1967.  Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Anthony J. Bonadio,* Assistant District Attorney, with him *Edward B. Doran, Jr.,* Assistant District Attorney, and *Joseph M. Loughran,* District Attorney, for Commonwealth, appellant.

*Irving M. Green,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 23, 1969:

This is an appeal by the Commonwealth from an Order of the lower Court suppressing a confession by the defendant.

Robert Houser was shot and killed in the early morning of *March 28, 1965.* The police were immediately called to the scene where they spoke with Geraldine Taper, aged 17, who stated that the gun (which was Houser's) went off accidentally as she was handing the gun to him. Houser had been the father of one of Geraldine's two illegitimate children.

The police took Geraldine into custody that same morning at approximately 3:30 A.M., at which time she was driven to the police station for questioning. Later on, the police drove her to the scene for a reenactment of the shooting, and at approximately 9:30 that morning, she signed a written statement which implicated her in the shooting.

Prior to her trial, Geraldine engaged counsel, who filed with the lower Court a motion to suppress her written statement on the ground that she had not been afforded her Constitutional rights and protections. A hearing was held before Judge RIAL, who denied the motion to suppress,* without an Opinion or enumerating his reasons. At the trial which commenced on *June 7, 1965,* Judge RIAL denied defendant's renewed

---

* The record does not indicate whether Geraldine Taper testified at this hearing.

motion to suppress. During the trial, the written confession was admitted over defendant's strenuous objection. The jury returned a verdict of guilty of murder in the second degree.

A post-trial motion (a) in arrest of judgment was dismissed, but (b) her motion for a new trial was granted by a three-Judge Court. No reasons were given for the grant of a new trial, but the Court en banc ordered that a preliminary evidentiary hearing be held by Judge KEIM to determine whether the statement of the defendant was voluntary and whether she had intelligently and knowingly waived her right to remain silent and her right to counsel.* This hearing was required by *Jackson v. Denno*, 378 U.S. 368; *Commonwealth v. Heckathorn*, 429 Pa. 534, 241 A. 2d 97; *Commonwealth v. Patrick*, 416 Pa. 437, 206 A. 2d 295; *Commonwealth ex rel. Gaito v. Maroney*, 416 Pa. 199, 204 A. 2d 758. A hearing was held in May of 1967, as a result of which Judge KEIM—*in spite of the fact that Geraldine Taper did not testify*—granted the motion to suppress and stated that it was not to be used at the new trial of the defendant.

The Commonwealth now appeals from the Order granting the motion to suppress. We hold that *under the facts in this case,* this Order is appealable by the Commonwealth. *Gaskins Case,* 430 Pa. 298, 305, 244 A. 2d 662; *Commonwealth v. Fisher,* 422 Pa. 134, 221 A. 2d 115; *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A. 2d 304.

In *Gaskins Case,* 430 Pa., supra, this Court said (page 305) : "Although, as a general rule, the Commonwealth is not entitled to appeal in criminal cases, this

---

* The Commonwealth complains that the trial Court in effect granted a new trial in anticipation of the subsequent hearing on the motion to suppress. Since the Commonwealth did not take an appeal from the Order granting a new trial within the permissible period, this question is not before us.

Court has repeatedly ruled that the Commonwealth may appeal from adverse rulings on pure questions of law [citing seven recent cases of this Court].

"Furthermore, this Court has recently held that the Commonwealth may appeal from pre-trial rulings on matters of law where the practical effect of such a ruling is to terminate the prosecution. Commonwealth v. Bosurgi, 411 Pa., supra."

In *Commonwealth v. Fisher*, 422 Pa., supra, the Court said (page 136) : "A motion to quash the Commonwealth's appeal has also been filed. It will be denied. The Commonwealth has the right to appeal from a pretrial order suppressing evidence where it appears that it will be substantially handicapped in the prosecution of the case, because it cannot present all of its available evidence: [cases cited]."

The Commonwealth contends that the suppression Order entered by the lower Court is appealable for either or both of the following reasons: (a) the Order of suppression will result in a termination and conclusion of the prosecution or (b) even if the Order of suppression will not result in a termination or conclusion of the prosecution, the Commonwealth will be substantially handicapped in the prosecution of the case because it cannot present *all* its available important evidence. We agree with the Commonwealth's second contention, and hold that an appeal will lie.

The law which governs the legality and admissibility of Geraldine's statement at her trial is that which was enunciated in *Escobedo v. Illinois*, 378 U.S. 478, 490-491.* See *Johnson v. New Jersey*, 384 U.S. 719, 721.* *Escobedo* ruled that an in-custody statement

---

* It is unnecessary to decide whether *Miranda v. Arizona*, 384 U.S. 436, will apply upon a retrial of this case. The question of its retroactive application to a retrial after June 13, 1966, is presently being considered by the Supreme Court of the United States.

could not be used against an accused or a criminal defendant when (1) the defendant requested an attorney and such request was refused, and (2) the defendant was not advised of the right to remain silent during the interrogation process. In Judge KEIM's Opinion, he stated that defendant was advised of her right to counsel and of her right to remain silent, but *concluded* that she did not understand the significance of what she was being told and, as a result, *did not knowingly and understandingly waive these rights*. He based his *conclusion* on her responses to the questions of the police, buttressed by the fact that she suffered from lack of sleep and was only 17 years of age.

The Commonwealth contends that Judge KEIM was in error, because (a) although only 17 years of age Geraldine could read and write, and (b), much more important, the statement which she signed expressly and specifically states that she had been advised of her right to counsel at the Commonwealth's expense and that anything she would say might be used against her in the event she was prosecuted.

Judge KEIM found (a) that Geraldine was advised of her right to remain silent, and (b) that anything she said could be used against her, and (c) that the police had advised her of her right to counsel without waiting for a request for an attorney. However, the question on this appeal is (1) whether the record supports Judge KEIM's *conclusion* that "under the totality of the facts and circumstances" (*Payne v. Arkansas,* 356 U.S. 560; *Blackburn v. Alabama,* 361 U.S. 199; *Fikes v. Alabama,* 352 U.S. 191; *Commonwealth v. Bishop,* 425 Pa. 175, 228 A. 2d 661; *Commonwealth ex rel. Corbin v. Myers,* 423 Pa. 243, 223 A. 2d 738; *Commonwealth ex rel. Gaito v. Maroney,* 422 Pa. 171, 220 A. 2d 628), Geraldine did not understand the significance of what she was being told, and therefore did

not voluntarily waive her right to be silent or to be assisted by counsel during the interrogation process; and (2) whether Judge KEIM's decision was a capricious disbelief of the evidence or was a palpable abuse of discretion or was based upon an error of law.

Geraldine did not give any testimony. At the Court hearing before Judge KEIM on her motion to suppress her implicating statement, Geraldine did not testify. Moreover, toward the conclusion of her written statement (or confession), the following appears: "The police advised me of my Constitutional rights, advised me that I did not have to make the above statement, that I was entitled to counsel of my choice or furnished by the District Attorney, and that any statement made by me could and would be held against me." However, it developed during the testimony given by the interrogating police officers at the Court suppression hearing that some of these words were not those of Geraldine, but were rather a statement of the police officers of their interpretation of what occurred. *At the trial—* but not at the suppression hearing—Geraldine testified that she did not understand what "Constitutional rights" meant, and that no one would explain this to her. She added that she was "sleepy," when she was asked to read the aforesaid written statement. Furthermore, although the police officer who first arrived at the scene of the killing testified that Geraldine told him the shooting was accidental and Geraldine so testified at her trial, there was no mention of accident in her written statement.

The interrogating police officers testified at the suppression hearing that when Geraldine Taper was advised of all her Constitutional rights and asked if she understood, she would nod her head. Judge KEIM was of the opinion that her head-nodding should not be given much consideration because of the fact that

she was in custody from about 3:30 in the morning and the taking of this statement did not begin until approximately 9:45 in the morning; and the fact that she was up all night may have indicated that the nodding was from lack of sleep. Judge KEIM pertinently said: "We do not feel that the nodding in this particular instance should be given much consideration because on the basis of all other facts considered, it is apparent the nod was not meant as an affirmative answer."

The police officers testified that when they advised Geraldine of her right to counsel, she answered that she would get an attorney if it was necessary. Judge KEIM concluded from this response that, having been charged with a capital offense which could result in the death penalty, Geraldine indicated a lack of understanding of the seriousness of the charge and its consequence, and, therefore, she did not knowingly waive the rights and protections given her by the Constitution.

*Age,* intelligence and the condition of the suspect (or defendant) are among the factors to be considered in determining whether an inculpatory statement or a confession was voluntary and whether a suspect or defendant was properly advised of and understood the rights and the protections granted her by the Constitution, and whether her decision not to avail herself of these protections was a knowing and intelligent waiver.

We have carefully reviewed the record and, while the question is a very close one and Judge KEIM's decision was a conclusion, as distinguished from a true finding of fact, we cannot say that the Order of the Court below was based upon a capricious disbelief of the evidence or upon an error of law or was a palpable abuse of discretion.

Order affirmed.

Mr. Justice JONES, Mr. Justice COHEN and Mr. Justice O'BRIEN concur in the result.

Mr. Justice MUSMANNO did not participate in the decision of this case.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I believe that the order of the court below suppressing appellee's confession should be affirmed for the following reasons:

At the outset, I believe that this case can be decided solely under *Escobedo* and thus no question is raised as to whether *Miranda* applies to a retrial commenced after the date of the *Miranda* decision when appellee's original trial predated *Miranda*. Thus although the implication that *Miranda* does *not* apply to retrials can be drawn from the majority's statement that "the law which governs the legality and admissibility of Geraldine's statement at her trial is that which was enunciated in Escobedo v. Illinois, 378 U.S. 478, see Johnson v. New Jersey, 384 U.S. 719," I cannot believe that the majority intended to decide so important an issue in such a cavalier manner.[1] In any event, if the majority does think that it is so deciding, its statement is only gratuitous dictum, and clearly not controlling. See *Commonwealth v. Christman*, 432 Pa. 455, 459 n.2, 247 A. 2d 451, 453 n.2 (1968).

Moving to the merits, I believe that *Escobedo* has been violated for two reasons. First, in my view *Escobedo* requires that a confession be suppressed if a

---

[1] This question, which has been the subject of considerable dispute, see Comment, 116 U. Pa. L. Rev. 316, 317 (1967), has not yet been decided by this Court or by the Supreme Court of the United States, although the latter has granted certiorari to decide it, *Jenkins v. Delaware*, 393 U.S. 950, 89 S. Ct. 380 (1968), and on March 5, 1969 heard argument. 37 L.W. 3335.

prisoner is not warned of his right to remain silent. That right of course can be waived, but footnote 14 of the *Escobedo* opinion indicates by its citation of *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019 (1938) that that waiver must still be, in short, a knowing and intelligent one. The court below found that appellee did not understand what she was being told, and this finding precludes the possibility that her waiver was knowing and intelligent. It causes no particular harm, I suppose, for the majority to perform verbal theatrics in determining whether given statements of the court below were "findings" or "conclusions," although it should be pointed out that this case is in no way different than the many cases in which we affirm findings of the hearing judge that, for example, a guilty plea has been voluntarily entered, see, e.g., *Commonwealth v. Wakeley*, 433 Pa. 159, 249 A. 2d 303 (1969).

What is important is that there is support in the record for the court's ultimate finding. The court below pointed out that the record showed that appellee was sleepy and seemed to have been nodding her head aimlessly during the period in which she was told of her rights. The court also found that the statement which appellee gave, including that part in which she supposedly admits to knowing her rights, was not in her own words. On this record, I do not believe that we could hold that as a matter of law appellee knowingly and intelligently waived her right to remain silent.

Second, I believe that regardless of the view one takes of *Commonwealth v. Schmidt*, 423 Pa. 432, 224 A. 2d 625 (1966); cf. *Billingsley v. New Jersey*, F. 2d    (1969), which when applied to the facts of this case would require a request for counsel to have been made before appellee's *Escobedo* right to counsel would attach, appellee has been denied counsel in vio-

lation of *Escobedo* because she *did* in effect request an attorney.[2] At several times during the interrogation appellee said that, if necessary, she would obtain the services of an attorney. In my view, the fact that a request for counsel is not couched in language of the utmost clarity and has not specifically been made and refused does not mean that a *Schmidt* "request" has not been made. Given the fact that the accused was a 17 year old girl, and apparently was, in general, far from entirely lucid, I believe her statement that she would obtain an attorney if necessary constitutes a sufficient request.[3]

---

[2] The interrogating officers apparently did not tell appellee that the presence of an attorney was necessary. Of course, it cannot be known if their failure to do so was based upon a belief that an attorney would hinder the interrogation process.

[3] In *Frazier v. Cupp*, 37 L.W. 4362, 4364 (April 22, 1969), an opinion announced on the day before our decision in the case before us was filed, the Supreme Court of the United States held insufficient as an *Escobedo* request a prisoner's in-custody statement that: "I think I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now", to which the officer replied, "You can't be in any more trouble than you are in now." I believe that the *Frazier* decision is unwise on its facts and would reject it as a matter of state law, an option that is open to us when we believe that the Supreme Court of the United States has too narrowly drawn the bounds of constitutional protections. See *Johnson v. New Jersey*, 384 U.S. 719, 733, 86 S. Ct. 1772, 1781 (1966).

The Court in *Frazier* reasoned that the prisoner's statement may have merely been "a passing comment" especially since the prisoner continued to answer questions after it became clear that no lawyer was forthcoming. It seems to me that Frazier's request was a rather explicit one, and I think it is totally unrealistic to view it as anything less than that. Certainly Frazier said what he did because he wanted a lawyer. I do not believe that prisoners make "passing comments" of this type merely to pass time with interrogating police officers. I also would reject the Court's argument that "petitioner did not pursue the matter." Under the circumstances, I do not think there was anything Frazier could

I thus conclude that appellee's statements were obtained under circumstances violative of *Escobedo*, and thus agree that the order of the court below should be affirmed.

---

have done but continue to answer questions. An in-custody prisoner undergoing police interrogation is hardly in a position to be too uncooperative.

In my view, the Court is also on shaky ground in reasoning that although this might be a sufficient "request" under *Miranda*, it is not under *Escobedo*. Even assuming the questionable proposition that the factual determination of what is a "request" should be different under the two cases, I believe that the Supreme Court's approach has put the wall on top of Humpty-Dumpty. Considering the fact that under *Escobedo*, less complete warnings are necessary than under *Miranda*, I would think that a prisoner having been told less, if anything would be required to be less articulate in his demands.

In any event, I believe that *Frazier* need not preclude the position which I have taken in this case. I cannot believe that the Court in *Frazier* meant to exclude from consideration the age, intelligence, experience, and condition of a prisoner in determining whether an *Escobedo* request has been made. Certainly Geraldine Taper, a tired, seventeen year old girl of limited intelligence, could not be expected to be as articulate as at least some prisoners who have had considerable experience in the criminal process. I believe that her requests here, under the circumstances, were sufficient.