# Commonwealth *v.* Keysock, Appellant.

476

Submitted September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Philip M. Cullen,* Assistant Public Defender, and *Theodore S. Danforth,* Public Defender, for appellant.

*Charles A. Achey, Jr.,* Assistant District Attorney, and *D. Richard Eckman,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., September 22, 1975:

On January 27, 1973, the car in which appellant and his wife were riding was involved in an accident with another car on Route 30 in Lancaster County. An investigating police officer found appellant and his wife lying on the road near their car. Glindon Ashbrook, the driver of the other car, died as a result of the injuries he sustained in the collision. Appellant was arrested on April 5, 1973, and charged with involuntary manslaughter. A pre-trial motion was filed to suppress a statement by appellant that he was the driver of his car. After a hearing, the motion was denied, and appellant was brought to trial before President Judge JOHNSTONE and a jury. At the conclusion of the Commonwealth's case, appellant filed a demurrer to the evidence, but the trial judge overruled it. The jury in due course returned a verdict of guilty. Motions in arrest of judgment and for a new trial were denied by the court *en banc,* and appellant was sentenced to a term of six to twelve months in the Lancaster County Prison and was ordered to pay a fine of $200 plus costs.

Appellant raises four issues on appeal: that the trial judge erred in refusing to suppress appellant's pre-trial statement; that he erred in admitting into evidence opin-

ions by eyewitnesses concerning the speed of appellant's vehicle; that he erred in admitting into evidence the expired state inspection sticker from appellant's car; and that the evidence was insufficient to support appellant's conviction. The first question we must decide is which of these issues is properly before us.

Appellant's post-trial motions do not raise the issues concerning the witnesses' opinions and the inspection sticker. He therefore is precluded from raising those issues on appeal. *Commonwealth v. Blevins,* 459 Pa. 652, 331 A.2d 180 (1975) ; *Commonwealth v. Bronaugh,* 459 Pa. 634, 331 A.2d 171 (1975) ; *Commonwealth v. Kearney,* 459 Pa. 603, 331 A.2d 156 (1975) ; *Commonwealth v. Reid,* 458 Pa. 357, 326 A.2d 267 (1974) ; *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972); Pa. R. Crim. P. 1123. The other two issues, the suppression issue and the sufficiency issue, were raised in the post-trial motions. Since those issues were also raised at trial, it would seem that they were properly preserved for appeal. The court *en banc,* however, opens its opinion with the statement that "[t]he only question argued by defense counsel, both orally and in his brief, was whether the defendant's admission that he was driving the car which caused the victim's death was properly admitted into evidence. No question was raised that the evidence did not support the verdict in quantity and quality and no error was alleged in the charge." Slip Op. 1. The court then proceeds to consider only the suppression issue. From this it is clear that that issue is properly before us on appeal. In regard to the sufficiency issue, however, a novel question is presented: Apparently the court *en banc* considered the issue either waived or abandoned (the court did not say which); but was it?

A litigant must do two things in order to preserve an issue. First, he must make a timely, specific objection at trial. *Commonwealth v. Williams,* 458 Pa. 319, 326 A.2d 300 (1974) ; *Commonwealth v. Kuterbach,* 458 Pa.

318, 326 A.2d 283 (1974) ; *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). And second, he must raise the issue on post-trial motion. *Commonwealth v. Blevins, supra; Commonwealth v. Bronaugh, supra; Commonwealth v. Kearney, supra; Commonwealth v. Reid, supra; Commonwealth v. Agie, supra.* Here, appellant met both of these requirements. He raised the sufficiency issue at trial by his demurrer to the evidence, and he raised it on post-trial motion by listing it as a reason supporting the motion. Accordingly, the issue cannot be considered waived.

Our appellate courts have generally considered an issue to have been abandoned when the party has properly preserved the issue at trial but then failed to pursue it on appeal. *See Commonwealth v. Piper,* 458 Pa. 307, 310 n.5, 328 A.2d 845, 847 n.5 (1975) ("Failure to pursue an issue on appeal is just as effective a forfeiture as is the failure to initially raise the issue."); *Yefko v. Ochs,* 437 Pa. 233, 236 n.1, 263 A.2d 416, 418 n.1 (1970); *Harman v. Chambers,* 358 Pa. 516, 522, 57 A.2d 842, 845 (1948). So far as this court is concerned, what this means is that the appellant must file a brief with each specific issue listed as one of the "Statement of Questions Involved." Rule 22 of the Superior Court Rules requires the appellant to file a brief before argument, and provides that if he does not, the appeal will be dismissed. Rule 42, in turn, requires the appellant to list his legal arguments in a section of the brief entitled "Statement of Questions Involved," and warns that this requirement "is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." *Accord,* Supreme Court Rules, Rule 52; Rules of the Commonwealth Court, Rule 93. Therefore, any person who appeals to this court knows or should know that in order to raise an issue he

must follow a certain procedure, and that if he does not, the issue will be considered to have been abandoned.

Here, the court *en banc* appears to have followed the same procedure that this court does. The difficulty is, however, that the court does not have any rule comparable to our Rules 22 and 42.

The Pennsylvania Rules of Criminal Procedure do not require that briefs be filed with post-trial motions. In fact, Rule 1123 states that "[i]f the grounds asserted do not require a transcript, neither the filing nor argument of post-verdict motions shall be delayed for lack of a transcript of the notes of testimony." Nor do the Lancaster County Rules of Court require briefs with post-trial motions. Those rules are divided into two parts: the Rules of the Court of Common Pleas, and the Rules of the Courts of Oyer and Terminer and General Jail Delivery and Quarter Sessions, the former dealing with civil cases, the latter with criminal. For the criminal cases, there are two rules dealing with post-trial motions. Rule 11.10 provides: "Oral Motions for a New Trial and in Arrest of Judgment must be made on the day on which the jury verdict is rendered and written Motions, together with supporting reasons, must be filed within seven days following the verdict." Rule 11.11 provides: "All written Motions for a New Trial and in Arrest of Judgment must be accompanied by an affidavit made by the attorney for the moving party that said Motion is not made for the purpose of delay, but because it is believed that an injustice has been suffered."[1] Here, appellant complied with the relevant rules of court; he did file oral and written

---

1. This court is aware that the Lancaster County Rules of the Court of Common Pleas require a party to file a brief before arguing a motion. Rule 5.30. However, this rule is not relevant here. As mentioned, there is one set of rules for civil cases and another for criminal. If the promulgators wished to make such a rule as Rule 5.30 applicable to criminal cases, they should have expressly done so in the rules applicable to such cases.

motions; he did give sufficiency of the evidence as a reason in support of his motion; and he did file the requisite affidavit.

In these circumstances, we conclude that appellant did not abandon the sufficiency issue; to say that he had, would be to penalize him for failing to do something he was not required to do. We do not hold that an issue cannot be abandoned before a lower court unless the court has rules comparable to our Rules 22 and 42. However, in the absence of such rules the record must show abandonment. Since here it does not, we shall consider not only the suppression issue but also the sufficiency issue.

## I

The record of the suppression hearing discloses that appellant was seriously injured in the accident and was in the hospital for approximately fifteen days (eight days in a coma). State Trooper McVitty, who investigated the accident, tried to speak with appellant the day of the accident but was unable to. He did not try again until early March because he did not want to aggravate appellant's injuries in any way. Finally, on March 7, 1973, McVitty and Lancaster Detective Fletcher went to appellant's home to question him. There McVitty, using a card, immediately read the *Miranda* warnings to appellant. When asked, appellant said he understood his rights. McVitty then asked appellant about his health and whether he felt up to talking; appellant said he did. McVitty then asked appellant whether he had been the driver of the car involved in the accident, and appellant said he had been. At that point, McVitty was handed the telephone and was advised by defense counsel that appellant did not wish to answer any more questions. No further questions were asked.

Appellant's testimony at the suppression hearing did not rebut that presented by the Commonwealth except for one crucial point. Appellant denied ever saying he

was the driver of the car; he testified that he only admitted to being the owner of the car. The hearing judge, however, chose not to believe appellant, and appellant does not contest that decision. Instead, it is appellant's position that the judge should have refused to allow McVitty to testify concerning appellant's alleged admission because appellant did not voluntarily waive his right to remain silent. He argues that the trooper's initial inquiries about his health so disarmed him that he was tricked into giving a statement he did not wish to give. We find this contention to be without merit.

It is clear that an individual may waive his *Miranda* rights. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966); *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Taper,* 434 Pa. 71, 253 A.2d 90 (1969). This waiver does not have to be in writing, *United States v. Stuckey,* 441 F.2d 1104 (3d Cir. 1971), but the Commonwealth must show by the preponderance of the evidence that the waiver was knowingly and voluntarily made. *Commonwealth v. Goodwin, supra; Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Taper, supra. See generally, Johnson v. Zerbst,* 304 U.S. 458 (1938). There is no fixed rule by which one can judge voluntariness; rather, all the attending factors and circumstances must be considered. *Commonwealth v. Goodwin, supra; Commonwealth v. Starkes, supra.*

In *United States v. Del Porte,* 357 F. Supp. 969 (S.D.N.Y. 1973), *aff'd,* 483 F.2d 1399 (1973), the court was confronted with a claim similar to appellant's. The police officers there were very kind when questioning the accused. There, as here, it was claimed that this kindness was a form of trickery or psychological coercion serious enough to justify a finding of involuntariness. The court, however, rejected this claim, stating: "While recognizing that emotional pressures can reach such levels, this Court finds that such was not the case here. These are not the

kinds of law enforcement practices prohibited by the various branches of this exclusionary rule." *Id.* at 976. Similarly, in the present case, we find no reason to condemn the trooper's actions, but to the contrary, find them eminently proper. The trooper was rightfully concerned with appellant's health and with his ability to understand the import of the pending interview, and his questions tended to establish rather than vitiate the voluntariness of appellant's waiver.

## II

In determining whether evidence is sufficient to sustain a conviction, all the evidence must be regarded in the light most favorable to the Commonwealth, and the Commonwealth must be given the benefit of all reasonable inferences arising from it. *Commonwealth v. Busler,* 445 Pa. 359, 284 A.2d 783 (1971); *Commonwealth v. Gladden,* 226 Pa. Superior Ct. 13, 311 A.2d 711 (1973). So regarded, the following facts were established at trial. In September, 1972, appellant purchased for $100 a 1956 Chevrolet. The car was not operative, so appellant towed it to his parents' garage and began to rebuild it. He did such things as put in a new engine, replace the transmission, fix the electrical system, repair the chassis and the interior, add a roll bar, and put on new tires. His hope was to make the car suitable for general family use. Appellant's interest in automobiles was not limited to this one car; he was interested in a career as an automobile mechanic. To that end, he enrolled in a course at Willow Street Vo-Tech on December 4, 1972. There he was on the third shift and was taught "about cars and inspections and the driver training, the motor and all of this." Much of the work he did on his car was done at the Vo-Tech workshop. After he got the car running, appellant noticed that the wide tires he had bought for the rear wheels of the car were rubbing and therefore an adjustment would have to be made. Pending making this

adjustment, appellant put on a pair of tires that had been on his mother's car. On the day of the accident, January 27, 1973, appellant was driving his car with these replacement tires on it, on Route 30, a four lane highway. He had never had the car inspected; the inspection sticker on the front windshield had expired on July 31, 1972. Appellant said, however, that the tires had passed inspection when they were on his mother's car, which had been inspected in October, 1972. It was a dreary, rainy day, and, according to other motorists on the road at that time, the highway was slippery. Appellant was not driving over the speed limit, but he was driving between fifty and sixty miles per hour when the back of his car began to fishtail. According to appellant's wife, this action was preceded by a bang. In any case, appellant was not able to stabilize his car, and it spun around, crossed a twenty-foot wide grass medial strip, and crashed head on into another car. Glindon Ashbrook, the driver of that car, died early the next morning from injuries sustained in the collision. Trooper McVitty, when examining appellant's car, noticed that the rear tires were smooth. When tested, it was discovered that the tread on these tires did not meet the minimum requirement set by The Vehicle Code, Act of April 29, 1959, P.L. 58, §841, Dec. 27, 1965, P.L. 1216, §§1,2, 75 P.S. §841. That Act requires the tread depth to be a least two-thirty-seconds of an inch. One of appellant's rear tires had a tread depth of one-thirty-second of an inch; the other had less than that.

The classic definition of involuntary manslaughter is "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *Commonwealth v. Busler, supra at* 361, 284 A.2d at 784; *Commonwealth v. Mayberry,* 290 Pa. 195, 198, 138 A. 686, 687 (1927) ; *Commonwealth v. Piper,* 183 Pa.

Superior Ct. 229, 232, 130 A.2d 195, 196 (1957) ; *Commonwealth v. Russin,* 171 Pa. Superior Ct. 268, 271, 90 A.2d 395, 397 (1952). *See generally,* Act of June 24, 1939, P.L. 872, §703, 18 P.S. §4703.[2] "Where the act in itself is not unlawful, that is, contrary to law, then to make it criminal, negligence must be such a departure from what would be the conduct of an ordinary prudent man under the same circumstances as to evidence a disregard of human life or an indifference to consequences." *Commonwealth v. Busler, supra* at 361, 284 A.2d at 784; *Commonwealth v. LaPorta,* 218 Pa. Superior Ct. 1, 9, 272 A.2d 516, 520 (1970) ; *Commonwealth v. Zeringo,* 214 Pa. Superior Ct. 300, 302, 257 A.2d 692, 693 (1969) ; *Commonwealth v. Holman,* 160 Pa. Superior Ct. 211, 212, 50 A.2d 720, 721 (1947). Although not explicit in the above definition, it has been made clear that an essential and distinct element of the crime is that the conduct must be the direct cause of the death in issue. *Commonwealth v. Feinberg,* 433 Pa. 558, 253 A.2d 636 (1969); *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961) ; *Commonwealth v. Morris,* 84 Montg. 283 (1964), *aff'd,* 205 Pa. Superior Ct. 105, 207 A.2d 921 (1965).

In the present case, appellant was driving his car in violation of The Vehicle Code, *supra.* The car had not been inspected as required by the Code, *supra* at §834(h), and the rear tires did not meet the requirements of the Code, *supra* at §841. Appellant was therefore clearly committing an "unlawful act." Our courts, however, have expressly held that conduct made unlawful by The Vehicle Code is not necessarily the kind of "unlawful act" included within the definition of involuntary manslaughter. *Commonwealth v. Busler, supra; Commonwealth v. Clowser,* 212 Pa. Superior Ct. 208, 239 A.2d 870 (1968).

---

2. The Pennsylvania Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa.C.S. §2504, does not govern the present case because the accident occurred before the effective date of the Act.

The reason for these decisions is that the Code in many instances makes acts of ordinary negligence unlawful. Therefore to say that any violation of the Code is sufficient *per se* to prove involuntary manslaughter would be to allow a person to be held criminally liable for acts of simple negligence. Accordingly, "to sustain a conviction of involuntary manslaughter for a death resulting from an act which constitutes a transgression of The Vehicle Code, it must be established that such violation in itself, or together with the surrounding circumstances, 'evidence a disregard of human life or an indifference to consequences.' " *Commonwealth v. Busler, supra* at 361, 284 A.2d at 784. *Accord, Commonwealth v. Greer,* 232 Pa. Superior Ct. 448, 335 A.2d 770 (1975) ; *Commonwealth v. Clowser, supra.* In the present case, then, we must decide (1) whether appellant's conduct met this standard of culpability, and (2) whether his conduct was the cause of Ashbrook's death.

-1-

There is no direct evidence that appellant decided to drive his car in disregard of human life or with indifference to the possible consequences. This may, however, be inferred from the surrounding circumstances. *Commonwealth v. Hicks,* 203 Pa. Superior Ct. 307, 201 A.2d 294 (1964); *Commonwealth v. Hartle,* 200 Pa. Superior Ct. 318, 188 A.2d 798 (1963). The most important of those circumstances is that appellant chose to drive his car with defective tires. The defect was not latent, but rather the tires were visibly worn, if not bald. Trooper McVitty immediately noticed this when he examined the car after the accident. If McVitty could make this observation, so could appellant. He was not unfamiliar with cars; rather, by his own admission, he had practically built the car himself, and he was taking a course in automobile mechanics. The jury could therefore reasonably infer that appellant could spot a worn tire and would realize that it was dangerous. Fur-

ther, if appellant had put the tires on his car and taken it to be inspected, as required by law, he would have been told that the tires were not safe for highway use. Thus, it seems clear not only that appellant operated his car with defective tires, but that he did know or should have known of the dangers involved. Finally, appellant chose to drive the car on a wet, slippery highway. The decreased traction due to the tires' worn condition could only be exacerbated by the slickness of the road. However, appellant did not reduce his speed to compensate for this but instead drove at a high rate of speed. Considering all of these circumstances, we have concluded that the evidence was sufficient for the jury to find that appellant acted in "disregard of human life or [with] an indifference to [the] consequences." If the appellant had been required to use his car because of some emergency, or if he had taken some precautionary measures, our decision might be different, but that is not the case.

-2-

In deciding whether appellant's conduct was the cause of Ashbrook's death, the standard to be used is not the familiar proximate cause requirement that the conduct must be the direct cause of the death. *See generally, Commonwealth v. Root, supra.* Here, an eyewitness watched practically the whole sequence of events. As has been mentioned, appellant's car was travelling down the highway when the rear began to fishtail, and shortly thereafter it went into a spin, crossed the median, and crashed into Ashbrook's car. It is the fishtailing that is significant, for from this the jury could reasonably infer that the tires lost their grip on the road due to slipping. This was the very danger inherent in the use of worn tires, on a wet highway, at high speed. We therefore conclude that appellant's actions were the direct cause of Ashbrook's death.

The judgment of sentence is affirmed.