475 A.2d 810

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John FERGUSON.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 1984.

Filed April 19, 1984.

Eric B. Henson, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

Elaine G. DeMasse, Assistant Public Defender, Philadelphia, for appellee.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

■ The Commonwealth appeals from a lower court order suppressing all identification evidence.[1] Because we find two of the Commonwealth's three claims to have merit, we reverse in part and affirm in part.

In the early morning hours of December 25, 1980, in Philadelphia, two men robbed taxicab driver William Pereau at gunpoint. Immediately after the robbery, Pereau contacted police who showed him approximately 100 slides of persons matching Pereau's description of his assailants. However, appellee's picture was not among these slides and Pereau made no identification. Nine days later, Pereau notified police after discovering appellee's picture on the front page of a local newspaper in connection with a story about appellee's arrest for the robbery-homicide of another cabdriver. On January 12, 1981, Detective Frank Russell of the Philadelphia Police Department visited Pereau and showed him a photographic array which included a picture of appellee. Without hesitation, Pereau unequivocally identified appellee's picture as one of the men who had robbed him. Accordingly, appellee was arrested on January 14, 1981, and charged with a variety of offenses stemming from the Pereau robbery.[2] On March 4, 1981, an in-person lineup was held at the Philadelphia Detention Center. At this lineup, Pereau did not recognize appellee as one of his assailants and, consequently, made no identification. Nevertheless, at a preliminary hearing the next day, Pereau positively identified appellee, and appellee was bound over for arraignment. Following appellee's two waivers of his rights under Pa.R.Crim.P. 1100, defense counsel filed a motion to suppress all identification evidence on the ground

1. The Commonwealth may appeal from a pretrial order suppressing evidence when, as here, the Commonwealth will be substantially handicapped in the prosecution of its case because it is unable to present all of its available evidence. *Commonwealth v. Taper,* 434 Pa. 71, 253 A.2d 90 (1969); *Commonwealth v. Johnson,* 305 Pa.Superior Ct. 103, 451 A.2d 263 (1982).

2. At the time of his arrest for the Pereau robbery, appellee was already in custody for the robbery-homicide of the other cabdriver.

that, *inter alia,* the March 5, 1981 preliminary hearing identification procedure was unnecessarily suggestive. However, before a hearing could be held on this motion, defense counsel received the following letter from Assistant District Attorney Elliot Present:

Dear Ms. Chiarello: Pursuant to the Rules of Discovery, this letter is to advise you that on March 25, 1982, in the course of my preparation of the victim in the above-captioned case, he was told he would again be shown the photos at the Suppression hearing. The same photos which were shown by Detective Russell were handed to the witness. He then looked through the photos and picked out the defendant. There was no suggestion made to him as to which photo to select.

Very truly yours,

Elliot Present

(N.T. May 18, 1982 at 95). Consequently, defense counsel filed an amended suppression motion alleging, *inter alia,* that appellee's right to counsel had been violated on March 25, 1982 when, in the absence of defense counsel, Present showed Pereau the array of photographs, and Pereau identified appellee's picture. A suppression hearing was held on May 18, 1982, at which time Pereau again identified appellee as one of his assailants. However, at the conclusion of the hearing, the lower court found that appellee's right to counsel had been violated at the March 25, 1982 private meeting between Pereau and Assistant District Attorney Present. Therefore, the lower court felt justified in suppressing Pereau's four identifications of appellee, including: (1) the uncounselled photographic identification on March 25, 1982; (2) the pre-arrest photographic identification on January 12, 1981; (3) the preliminary hearing identification on March 5, 1981; and (4) the suppression hearing identification on May 18, 1982. We shall deal with the lower court's suppression of each identification *seriatim.*

I. *The March 25, 1982 Identification*

The Commonwealth contends that the lower court erred in suppressing Pereau's identification of appellee's

picture which occurred during the private meeting between Pereau and Assistant District Attorney Present. Specifically, the Commonwealth argues that the suppression court's reliance on *Commonwealth v. Whiting*, 439 Pa. 198, 266 A.2d 651 (1970) was misplaced because *Whiting* is factually inapplicable to the instant case. We disagree. In *Whiting*, our Supreme Court held that, following arrest, an accused has a right to have counsel present when his picture is presented to a potential witness for the purpose of obtaining an identification. Here, the private meeting between Pereau and Present on March 25, 1982, marked the first time in more than a year that Pereau had an opportunity to view appellee's picture. Thus, we must conclude that, in displaying the array of photographs to Pereau, the prosecutor's purpose was to obtain an identification and thereby ascertain Pereau's ability to identify appellee in court. Therefore, both *Whiting* and the instant case involve post-arrest photographic displays where the victim was asked to make an identification and where counsel for the accused was not present. Accordingly, we hold that *Whiting* is factually applicable to the instant case.

However, the Commonwealth also asserts that *Whiting* should not be followed in light of the United States Supreme Court's decision in *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). In *Ash* the Court held that the Sixth Amendment does not guarantee an accused the right to have counsel present at a post-indictment photographic display which contains a picture of the accused, and which is presented to the witness for identification purposes. While, "Our delineation of the state right is not necessarily circumscribed by the interpretations given by the Supreme Court of the United States to the corresponding federal right," *Commonwealth v. Ray*, 455 Pa. 43, 50 n. 4, 315 A.2d 634, 636 n. 4 (1974), there can be no question that, in light of *Ash*, *Whiting* may " 'no longer be considered to be an accurate statement of federal constitutional law.' ... This is so because when the United States Supreme Court states a rule based upon the Constitution of

the United States, the statement is binding on us under the Supremacy Clause. . . ." *Commonwealth v. Jackson,* 227 Pa.Superior Ct. 1, 14, 323 A.2d 799, 806 (1974) (SPAETH, J. concurring) (citations omitted), *quoting Commonwealth v. Claitt,* 454 Pa. 313, 319, 311 A.2d 922, 925 (1973) (POMEROY, J. concurring). The Court's decision in *Whiting* was bottomed on its interpretation of *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and the Sixth Amendment right to counsel. Nonetheless, we believe that the rule expressed in *Whiting* remains the law of Pennsylvania by virtue of Article I, § 9 of the Pennsylvania Constitution which provides, in relevant part, that "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel." *See Commonwealth v. Jackson, supra* 227 Pa. at 13, 323 A.2d at 805 (SPAETH, J. concurring). Furthermore, our view that an accused has the right to counsel at a pretrial photographic lineup under the Pennsylvania Constitution is supported by the fact that neither of Pennsylvania's appellate courts has chosen to overrule *Whiting* despite having had opportunities to do so. *See, e.g., Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974) (reaffirming the holding in *Whiting* that counsel is required at pre-indictment lineups despite a contrary holding by the United States Supreme Court in *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)); *Commonwealth v. Riley,* 284 Pa.Superior Ct. 280, 425 A.2d 813 (1981) (under *Whiting* appellant had a right to be represented by counsel at the post-arrest photographic display); *accord, Commonwealth v. Brown,* 302 Pa.Superior Ct. 80, 448 A.2d 535 (1982); *see also Commonwealth v. Tate,* 229 Pa.Superior Ct. 202, 207 n. 1, 323 A.2d 188, 191 n. 1 (1974) (HOFFMAN, J. dissenting) (given the Court's holding in *Commonwealth v. Richman, supra,* "it appears that our Supreme Court has taken a far more expansive view of the requirement of counsel at pretrial identification procedures" than has the Supreme Court of the United States). Thus, we decline the Commonwealth's invitation to "adopt the United States Supreme Court's holding in *Ash* until our Supreme Court chooses to declare it to be the law of the

Commonwealth." *Id.* Accordingly, we find that the lower court properly suppressed Pereau's identification of appellee's picture at the private interview session on March 25, 1982.

 The Commonwealth further claims that it was error for the lower court to suppress Pereau's identifications of appellee which both preceded and followed the uncounselled, post-arrest, photographic identification of March 25, 1982. However, before turning to these prior and subsequent identifications,[3] we note that:

> When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of the defendant's constitutional rights, ... and must determine whether the Commonwealth has established by a preponderance of the evidence that the challenged evidence is admissible.... On review, [we] must "determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." ... In doing so, we will consider "only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted."

*Commonwealth v. Davis,* 491 Pa. 363, 368, 421 A.2d 179, 181 (1980), *quoting Commonwealth v. Brown,* 473 Pa. 562, 566, 375 A.2d 1260, 1262 (1977) (citations omitted); *accord, Commonwealth v. Brown,* 302 Pa.Superior Ct. 80, 82, 448 A.2d 535, 536 (1982). Moreover, when considering the admissibility of all pretrial identifications, the essential criteri-

---

3. We wish to emphasize that in finding that the lower court properly suppressed the March 25, 1982 identification, our decision is based solely on our view that appellee had a right to be represented by counsel when Assistant District Attorney Present privately showed Pereau the stack of photographs for identification purposes. However, we will assume *arguendo* that the March 25 identification was the product of some improper suggestion by Assistant District Attorney Present so as to address the merits of the lower court's suppression of the identifications which occurred before and after March 25, 1982.

on is their *"reliability* under all of the circumstances disclosed by the record. The question for the suppression court is whether the challenged identification has sufficient indicia of reliability to warrant its admission even though [one of the confrontation procedures at issue] may have been suggestive." *Commonwealth v. Thompkins,* 311 Pa. Superior Ct. 357, 363, 457 A.2d 925, 928 (1983) (footnote omitted) (emphasis in original). *See Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). In other words, we employ a totality of the circumstances test when determining the reliability of a challenged identification; and, specifically, we consider the following factors:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Commonwealth v. Ransome,* 485 Pa. 490, 496, 402 A.2d 1379, 1382 (1979), *quoting Manson v. Brathwaite, supra,* 432 U.S. at 98, 97 S.Ct. at 2243. *See Commonwealth v. Johnson,* 305 Pa.Superior Ct. 103, 106, 451 A.2d 263, 265 (1982); *Commonwealth v. Townsend,* 280 Pa.Superior Ct. 155, 159, 421 A.2d 452, 454 (1980); and *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972).

II. *The January 12, 1981 Identification* [4]

■ At the suppression hearing the lower court itself concluded "that the photographic display shown by Detective Russell [to Pereau on January 12, 1981 prior to appellee's arrest] was *not* suggestive." (N.T. May 18, 1982 at

4. Clearly, appellee had no right to counsel at the photographic lineup held on January 12, 1981, as this occurred *prior* to appellee's arrest, that is, it "preceded the 'initiation of adversary criminal proceedings' as defined in Pennsylvania." *Commonwealth v. Richman,* 458 Pa. 167, 171, 320 A.2d 351, 358 (1974); *see Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970).

104) (emphasis added). Although the lower court has since decided that Pereau's January 12, 1981 identification was "problematic and of questionable accuracy and reliability," the record is devoid of any evidence which would tend to support this finding.[5] (Lower Court Op. at 18). In fact the circumstances surrounding the Pereau robbery indicate that Pereau was well-qualified to identify at least one of his assailants.[6] Pereau testified that at approximately 1:00 a.m. on December 25, 1980, while he was stopped at a traffic signal at the intersection of 18th and Cumberland Streets in Philadelphia, his cab was approached by two men. Pereau stated that after he refused to accept the men as passengers, appellee pointed a gun at his face and demanded money. Pereau explained that although he complied with the demand, he was forced to exit his cab and lie on the ground while the two men searched him before they fled. According to Pereau, the entire episode lasted approximately four or five minutes. Significantly, Pereau testified that, at the time of the robbery, the intersection of 18th and Cumberland Streets was well-lit and that he was able to observe one of his assailants (allegedly appellee) clearly and at very close range. Additionally, Pereau stated, "I looked at his [the gunman's] face, and when the man pointed the gun at me ... I stared at him because I wanted to see what he looked like, because as far as I knew ... it was my last breath. So I looked right smack in his face, so I can remember his face." (N.T. May 18, 1982 at 14). *See, e.g., Commonwealth v. Woods,* 275 Pa.Superior Ct. 392, 399, 418 A.2d 1346, 1350 (1980) *(en banc), appeal dismissed,* 498 Pa. 140, 445 A.2d 106 (1982) (victim's identification of her assail-

5. The lower court asserts that the photographic display which was presented to Pereau by police on January 12, 1981, contained the identical photograph of appellee which the victim had recognized in the newspaper nine days earlier. This claim, however, is unsupported by the record and is adamantly denied by the Commonwealth. But, even if the lower court were correct, it would not affect our ultimate disposition of this case.

6. Pereau's ability to identify his other assailant was apparently hindered by the fact that the other man stayed "more or less in the background." (N.T. May 18, 1982 at 11).

ant reliable because brief view of attacker under adequate lighting would have seemed like an eternity); *Commonwealth v. Rose*, 265 Pa.Superior Ct. 159, 171, 401 A.2d 1148, 1155 (1979) (victim's identification reliable because victim had an opportunity to view his assailant for a period of ten seconds under a street light under circumstances when the "most fleeting and most minute passage of time would seem like an eternity."); *Commonwealth v. Bradford*, 305 Pa.Superior Ct. 593, 597, 451 A.2d 1035, 1037 (1982) (in holding victim's in-court identification admissible where victim saw defendant's facial features at close range for three to four seconds while chasing him immediately after the robbery, this Court observed that, "Whenever the victim of a crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion.").

 Unquestionably, the robbery and the face of the gunman were still fresh in Pereau's mind when, on January 12, 1981, prior to appellee's arrest, he positively and unhesitatingly identified appellee's picture from a non-suggestive array of photographs. Furthermore, we find it significant that Pereau made no identification in the hours immediately following the robbery when the police failed to present him with a picture of appellee, but did show him more than 100 slides of individuals matching Pereau's description of the robbers. Therefore, we hold that it was error for the lower court to suppress Pereau's January 12 identification of appellee.

### III. *The March 5, 1981 Identification*

The lower court found that Pereau's identification of appellee at the preliminary hearing was unduly suggestive because appellee "had already been marked as the suspect by his courtroom position and the police officers who accompanied him." (Lower Court Op. at 18). Furthermore, in holding this in-court identification unreliable, the lower court noted Pereau "failed to identify [appellee] at the March 4, 1981 [physical] line-up [sic]," and that this fact

was of "crucial importance." (*Id.*) The issue of suggestiveness of an in-court confrontation was addressed by our Supreme Court in *Commonwealth v. Sexton*, 485 Pa. 17, 21–22, 400 A.2d 1289, 1291, (1979), wherein the Court commented that:

> The suggestive quality arising from a courtroom confrontation is created by the fact that the accused is clearly designated by his role in the proceeding as the suspected perpetrator prior to the identification. The type of inherent suggestiveness present in all one-to-one confrontations is present, and to some extent magnified, where the identification is made in open court.... Nevertheless, the key in determining the admissibility of such evidence is not simply the suggestiveness of the circumstances surrounding the identification but rather the likelihood of misidentification....

In *Sexton*, the defendant, a young, black male, was convicted of robbery and related offenses. On appeal, this Court found that a one-on-one confrontation at a pre-trial certification hearing, at which the victim identified the defendant for the first time, was unduly suggestive. *See Commonwealth v. Sexton*, 246 Pa.Superior Ct. 30, 369 A.2d 794 (1977). But our Supreme Court disagreed, stating that, under the totality of the circumstances test, the identification at the certification hearing was not "so unreliable as to offend due process." *Commonwealth v. Sexton, supra*, 485 Pa. at 22, 400 A.2d at 1291 (footnote omitted). This was so even though at the certification hearing "[the defendant] was the only young and black male in the courtroom where [the] case was announced by his name and the complaintant, while never having viewed [the defendant] in a non-suggestive setting, had been given [the defendant's] name by the police." *Id.*, 485 Pa. at 22 n. 4, 400 A.2d at 1292 n. 4. Thus, the Court concluded that the "identification at the certification hearing was [not] unduly suggestive, although it certainly was highly suggestive." *Id. See also Commonwealth v. Johnson, supra* (finding an in-court confrontation procedure not unduly suggestive where, immediately prior

to a preliminary hearing, the victim noticed that the defendant was handcuffed and that he was the only black in the hearing room; this holding despite the fact that the victim's assailant had also been black and that the victim had not made an in-person identification prior to the preliminary hearing). Thus, as was true in *Commonwealth v. Johnson, supra,* 305 Pa.Super. at 106, 451 A.2d at 265, we find that "any suggestiveness that may have been present at [the preliminary hearing] is inherent in the criminal justice system and is sufficiently outweighed" by the reliability of Pereau's testimony as demonstrated by the facts of this case. In addition, while Pereau's failure to identify appellee at the March 4, 1981 in-person lineup is a factor to be considered in assessing the reliability of the victim's identification testimony, it is not determinative of whether such testimony is admissible. *See, e.g., Commonwealth v. Silver,* 499 Pa. 228, 452 A.2d 1328 (1982) (victim's first-time, in-court trial identification of defendant admissible despite victim's prior failures to identify defendant at an in-person lineup and at a preliminary hearing); *Commonwealth v. Bradford, supra* (victim's trial identification of defendant admissible despite her earlier failure to make a positive photographic and in-person identification). Hence, the ability of a witness to positively identify an accused will affect that witness's credibility; and, therefore, the failure or uncertainty of a witness in making an identification at a given confrontation procedure goes to the weight to be accorded that witness's identification testimony rather than its admissibility. *Commonwealth v. Silver, supra,* 499 Pa. at 236, 452 A.2d at 1332; *Commonwealth v. Floyd,* 494 Pa. 537, 544, 431 A.2d 984, 988 (1981).

In conclusion, we can find no logical basis for the lower court's decision to suppress the identifications which took place on January 12, and March 5, 1981, that is, prior to the uncounselled photographic display. Plainly, there could be no danger that the events of March 25, 1982, tainted the identifications which occurred *before* that date.

Indeed, the lower court flatly stated that but for the uncounselled photographic display on March 25, appellee's suppression motion would undoubtedly have been denied. (N.T. May 18, 1982 at 104). Accordingly, we hold that the lower court erred in suppressing Pereau's identification of appellee at the March 5, 1981 preliminary hearing.

IV. *The May 18, 1982 Identification*

[13] Applying the totality of the circumstances test to Pereau's in-court identification of appellee at the May 18, 1982 suppression hearing, we believe that the instant facts clearly indicate that this identification testimony was reliable and independently based and, thus, not tainted by the events of the March 25 uncounselled photographic identification. Accordingly, we find that the lower court erred in suppressing Pereau's in-court identification testimony which occurred subsequent to March 25, 1982.

For the aforementioned reasons, the order of the court below is affirmed in part, reversed in part, and the case is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.