447 A.2d 275

COMMONWEALTH of Pennsylvania,

v.

John McCANDLESS, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 10, 1981.

Filed June 25, 1982.

Douglas M. Johnson, Norristown, for appellant.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, POPOVICH and MONTGOMERY, JJ.

SPAETH, Judge:

This is an appeal from an order dismissing a P.C.H.A. petition. Appellant claims that he did not knowingly waive his right to appeal the issue of whether his probation revocation hearing was held "as speedily as possible," as required by Pa.R.Crim.P. 1409. We are unable to resolve this claim on the basis of the record before us, and therefore remand.

On November 28, 1972, appellant pleaded guilty to burglary, larceny, and criminal conspiracy, and was sentenced to a total of nine years probation. On April 23, 1973, appellant pleaded guilty to burglary charges, and as a result, on May 4, 1973, he was charged with violating probation and a detainer was lodged against him. A probation violation hearing was scheduled for November 15, 1974, but was not held until December 5, 1974. Appellant's probation was revoked and he was sentenced to three to seven years in prison. Then-counsel for appellant filed an appeal from this sentence, but on November 19, 1975, counsel withdrew the appeal.[1]

1. On January 31, 1975, counsel had filed a petition for reconsideration. The record does not disclose the disposition of this petition.

On May 26, 1976, appellant, still by the same counsel, filed a P.C.H.A. petition alleging that the probation violation hearing had not been held "as speedily as possible," as required by Pa.R.Crim.P. 1409. On August 27, 1976, this petition was denied. However, the petition and the order denying it were improperly cross-indexed and therefore not made part of the record. This error was not discovered and corrected until June 11, 1981.

In the meantime, on June 25, 1980, appellant filed *pro se* a P.C.H.A. petition alleging that his counsel had been ineffective in failing to prosecute the appeal from the judgment of sentence imposed after his probation was revoked. Appellant alleged that he had instructed counsel to file an appeal but "was never informed thereafter about it," and that the issue he had wanted argued on the appeal was whether his probation violation hearing violated Rule 1409. A public defender was appointed to represent appellant, and a hearing was held on the petition. On October 16, 1980, the lower court entered an order denying the petition. This appeal is from that order.[2]

 Anyone convicted of a crime has an absolute right to appeal, *Commonwealth v. Wilkerson*, 490 Pa. 296, 416 A.2d 477 (1980); Pa. Constitution, Article V, § 9, and is entitled to effective assistance of counsel in perfecting an appeal, *Commonwealth v. Blackwell*, 258 Pa.Superior Ct. 121, 392 A.2d 714 (1978). However, counsel may not be faulted for failing to perfect an appeal where the right to appeal has been waived. *Commonwealth v. Robinson*, 487 Pa. 541, 410 A.2d 744 (1980). Here the appeal was perfected but withdrawn. The issue, therefore, is whether appellant waived his right to appeal by agreeing to his previous counsel's withdrawal of his appeal.

Previous counsel testified at the P.C.H.A. hearing. His testimony establishes that he had a strategic reason for withdrawing the appeal, but it does not reveal whether this strategy was ever communicated to appellant:

2. The appeal was not submitted for decision to us until September 10, 1981.

At that particular time I went to Judge Smillie on a number of occasions waiting for the opinion to be written. Judge Smillie for I can't remember why but Judge Smillie had been the emergency Judge at that time and I can't remember exactly what it was. Well, as the time was running *I contacted Mr. McCandless and I spoke constantly to his parents which are here in the courtroom. I told them about what was going on and that I was waiting for an opinion and how the time was running for Mr. McCandless to reach half of his minimum so that he could possibly be released on parole.*

During the period of that the Governor's administration there were releases at that time being given and at half the parole period. *I spoke to the parents and I have one fuzzy recollection and I am not going to say it is specific, I have one fuzzy recollection that I spoke to Mr. McCandless himself* the petitioner here when he called from the prison. And I told him what I would like to do and approach the Judge and tell the Judge that we were going to withdraw our appeal from the Superior Court. *I know I said it to the parents specifically. That we are going to withdraw our appeal from the Superior Court because he is approaching half of his minimum.*

I told him if he kept his nose clean for that period of time and I think it was only a matter of a couple of months. If he kept his nose clean for that period of time I would then request the Court or ask the Court to make— and not to oppose a parole release because at that time if the Judge wrote a letter or said that he did not oppose it it had a lot of weight to it. Governor Thornburgh changed that.

They agreed—Mr. McCandless—

MR. O'SHEA: I will object to that, Your Honor, what they said.

THE WITNESS: All right. I am sorry.

THE COURT: We will allow it. Go ahead.

THE WITNESS: *The parents agreed* and then subsequently Mr. McCandless got into a fight at the prison and

messed that up. I then came back because he was not going to be released early because of the fight at the prison.

N.T. 10/14/80, 18–20 (emphasis supplied).

Appellant also testified at the P.C.H.A. hearing. He acknowledged that counsel had told him that the appeal was going to be withdrawn—not, however, for a strategic reason but on the basis of a conversation with the judge who had conducted the probation violation hearing:

Q. Now, did you ever discuss with Arthur Gutkin an appeal in this case?

A. Yes, I asked for an appeal.

Q. And what happened as a result of your request for an appeal?

A. Said it was supposed to go in but it was left out again. I don't know.

Q. In other words,—

A. In other words, he told me that—

THE COURT: Don't tell him what in other words was.

Q. Could you attempt to clarify that supposed to go in but it was left out again?

A. It was supposed to go in and then he came back to me as the sheriffs were taking me out and said he was going to lift the appeal out of it because he talked to Judge Smillie and Judge Smillie admitted that he had made a wrong violation on the period of time that was on me before I had a hearing.

N.T. 10/14/80, 10–11.

In the opinion explaining its order dismissing appellant's P.C.H.A. petition, the lower court found that counsel was not ineffective because his strategy had a reasonable basis designed to effectuate appellant's interests. Slip op. at 4. However, the court appears to have overlooked the importance of the issue of whether appellant had agreed to the strategy. In any event, the court did not find that appellant had agreed to the strategy. Thus in its opinion the court said:

An appeal was timely filed but later discontinued in an attempt at improving defendant's chances for an early parole release. Defendant's counsel testified that at the time defendant was incarcerated, prisoners could be released on parole upon serving one-half their minimum sentence, that appellant was approaching one-half his minimum and that the record had not yet been forwarded to the Superior Court because the lower Court's opinion had not yet been written. Defendant's counsel visited the sentencing Judge on a number of occasions and concluded that if defendant withdrew his appeal the Judge would not oppose defendant's early release, which would have greatly enhanced his chances of being granted an early parole. Defendant's counsel contacted defendant *and spoke frequently with his parents who agreed with counsel's strategy.* After the appeal was withdrawn, defendant was involved in a fight in prison and was not granted early parole.

Slip op. at 3 (emphasis supplied).

We do not question the lower court's finding that counsel's plan was designed to effectuate appellant's interests by securing appellant's early release. Whether to adopt this strategy by withdrawing the appeal, however, was not a decision for appellant's parents but for appellant. As the Supreme Court has said, "The right [to effective assistance of counsel] . . . embodies the right to representation on appeal if the defendant so desires, whatever the prospects of success may appear to be to the court or counsel." *Commonwealth ex rel. Newsome v. Myers*, 422 Pa. 240, 243, 220 A.2d 886, 888 (1966), *cited with approval, Commonwealth v. Fareri*, 271 Pa.Superior Ct. 174, 412 A.2d 632 (1979). This principle is applicable whether the defendant wishes counsel to *file* an appeal that counsel believes should not be filed or to *prosecute* an appeal that counsel believes should not be prosecuted.

Nevertheless, we are not persuaded that we should reinstate appellant's appeal. As we have indicated, at least to a certain extent the proceeding before the lower court seems

to have missed the point. Appellant's petition cannot be properly decided until there has been a finding of fact, supported by evidence, either that appellant did, or that he did not, know about and agree to counsel's strategic decision to withdraw the appeal. As we have seen, the lower court made no such finding; nor does the record permit us to make it. Perhaps appellant did not know of the strategy. However, he was never asked in so many words whether he knew, and he never testified in so many words that he did not know. Perhaps appellant's counsel secured agreement to his strategy only from appellant's parents. Again, however, he was never asked in so many words whether that was the case; and there is some indication at one point in his testimony that had he been asked, he might have said that that was not the case.[3]

Since we are unable to determine whether appellant was denied his right to appeal or whether he waived it by agreeing to counsel's strategy, we must remand so that testimony may be taken on this issue. If on the basis of this testimony the lower court finds that appellant was denied his right to appeal, the court shall grant appellant leave to file an appeal *nunc pro tunc.* As explained in our recent decisions in *Commonwealth v. Miranda,* 296 Pa.Superior Ct. 441, 442 A.2d 1133 (1982), and *Commonwealth v. May,* 296 Pa.Superior Ct. 435, 442 A.2d 1129 (1982), once a defendant has shown that he was denied the right to appeal, the merits of his appeal are to be decided on the appeal to which he was entitled all along, and not by the lower court. If, however, the lower court finds that appellant was informed by counsel of his strategy, and agreed to having the appeal withdrawn, then the court shall reinstate its order denying appellant's P.C.H.A. petition. *See Commonwealth v. Robinson, supra.*

The order of the lower court is reversed and the case remanded for further proceedings consistent with this opin-

**3.** *See* N.T. 10/14/80, 24–26, where counsel, over objection, expresses his opinion that appellant had waived his appellate rights. *But cf.* this testimony with counsel's testimony, quoted page 132, *supra,* of "one fuzzy recollection" of speaking to appellant.

ion. We do not retain jurisdiction. Any appeal must be from such further order as the lower court may enter.