486 A.2d 1340

**COMMONWEALTH of Pennsylvania**

v.

**Larry Ray NELSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 1984.

Filed Dec. 31, 1984.

Petition for Allowance of Appeal Denied July 8, 1985.

Affirmed in part and reversed in part.

Robert J. Campbell, New Brighton, for appellant.

Anthony J. Berosh, Assistant District Attorney, Beaver, for Commonwealth, appellee.

Before McEWEN, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Beaver County denying the appellant's, Larry Ray Nelson's, request for relief pursuant to the Post-Conviction Hearing Act (PCHA). 19 Pa.S.A. § 1180–1 *et seq.*, as amended; reenacted at 42 Pa.C.S.A. §§ 9541–9551. We affirm the PCHA court in regard to the suppression and

jury charge issues, but are constrained to reverse as to the merger and allocatur claims.

The appellant, following a trial by jury, was convicted of robbery, aggravated assault and simple assault in the shooting of gas station attendant Rosemarie Sisco, in the presence of her 10-year-old son Eugene, on August 4, 1979. Post-trial motions, supplemented with a brief restricted to the single question of: "1. Did the Court err in denying defendant's motion for a 'demurrer' based on the insufficiency of proof of identification by prosecution witnesses?", were denied. Thereafter, the appellant was sentenced to 2½–5 years for robbery. For the aggravated assault conviction, the appellant was ordered to pay the costs of prosecution and a fine of $500, as well as being confined for not less than two nor more than four years at the Western Correctional, Diagnostic and Classification Center in Pittsburgh. The sentences were ordered to be served concurrently.

On appeal to this Court, in which trial counsel from the public defender's office raised the only issue argued below, i.e., the identification issue (*see* PCHA Hearing Tr. at 26), we affirmed per curiam the judgment of sentence. *Commonwealth v. Nelson*, 298 Pa.Super. 586, 443 A.2d 384 (1982) (Hester, Popovich and Montgomery, JJ.). No further appeal was taken.

On October 18, 1982, the appellant filed a *pro se* PCHA petition claiming the denial of his constitutional right to competent representation and the post-trial securement of exculpatory evidence. At the appellant's request, (private) counsel was appointed and submitted a "First Amended Motion For Post Conviction Relief" reasserting the competency question in the context of prior counsel's failure to raise at post-trial and on appeal:

1) the trial court's alleged error in not suppressing the identification testimony of the Siscos on the ground that "both witnesses participated in a post-arrest photo array at which Defendant was not represented by counsel...." (Paragraph 11, subsection (a))

2) the deficiency of the jury charge in not requiring the prosecution to prove by "clear and convincing" evidence a basis for the Siscos' identification testimony independent of the allegedly tainted post-arrest photo array.

3) the merger of aggravated assault and simple assault with the robbery offense.

At the commencement of the PCHA hearing, counsel for the appellant was granted his request to assail, in addition to the other grounds raised, prior counsel's failure to call Miss Teri Taylor, the appellant's sister, and a Miss Bonita Humphrey, both of whom, according to trial counsel's own recollection, would have testified to speaking on separate occasions with the victim and being told by her that "she was really not sure of who [sic] her assailant was...." (PCHA Hearing Tr. at 22)

However, just prior to the completion of the hearing, the appellant's counsel's attempt to add to the issues already mentioned the claim of prior counsel's failure to petition for allowance of appeal to the Supreme Court of Pennsylvania was denied by the PCHA court as "outrageous." (PCHA Hearing Tr. at 28) Undaunted, after the PCHA hearing, counsel for the appellant filed a "Second Amended Motion For Post Conviction Relief" raising all of the issues previously mentioned, with the inclusion of the allocatur claim. Nonetheless, all of the issues were found wanting and the relief requested was denied. This appeal ensued and the claims raised are properly before us for review. *See Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

Initially, the appellant complains that prior counsel was ineffective for failing to raise at post-trial or on prior appeal the suppressibility of the Siscos' 3–4 post-arrest photo identifications of him in the absence of counsel, citing to *Commonwealth v. Riley*, 284 Pa.Super. 280, 425 A.2d 813 (1981), which relies upon the ruling in *Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970), that an accused has a right to be represented by counsel at a post-arrest photographic display.

Since the merits of the aforementioned issue were not considered previously by this Court there is no reason to find the matter finally litigated, *see Commonwealth v. Hobson,* 286 Pa.Super. 271, 428 A.2d 987 (1981), nor is it waived given its juxtaposition with the "extraordinary circumstances" of counsel's ineffectiveness for its failure to appear previously on appeal. 42 Pa.C.S.A. § 9544(b)(2).

We note that both the Commonwealth and the PCHA court counter the appellant's tainted photo-array argument with the citation to *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) and *Commonwealth v. Jackson,* 227 Pa.Super. 1, 323 A.2d 799 (1974) as support for the abrogation of the *Whiting* holding concerning one's right to counselled photo-arrays following arrest.

We, as has been the case so often with our Supreme Court in like circumstances, find it unnecessary to reach the question of the continuing viability of *Whiting* following *Ash.* *See Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983) and compare with *Commonwealth v. Ferguson,* 327 Pa.Super. 305, 475 A.2d 810 (1984) (*Whiting* still good law in Pennsylvania despite *Ash* ).

Here, viewing the evidence in a light most favorable to the verdict-winner, as we must, and drawing all proper inferences therefrom the trier of fact could reasonably have found beyond a reasonable doubt that the appellant was the perpetrator of the crimes charged. *See Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1976). In fact, this was the conclusion drawn by this Court on appellant's initial appeal in which his counsel (now alleged to be ineffective) attacked the Siscos' pre-trial identification on inconsistency grounds claiming that a reversal of the trial court's denial of his demurrer was warranted. (*See* Record No. 11; PCHA Hearing Tr. at 26) Present counsel attempts to resurrect this inconsistency argument under the rubric of ineffectiveness as it relates to the suppression issue. In particular, appellant's counsel writes:

Both Rosemarie Sisco (Tr. 28) and Eugene Sisco (Tr. 32) testified at trial that they directly observed the defendant

at the time of the events in question. There was a significant discrepancy in the testimony of the two witnesses as to the length of the observation.

The direct observation aside, there are, defendant contends, weaknesses in the identification testimony of both witnesses. Rosemarie Sisco testified at trial that, when she selected defendant's photo at the time of the array, she was not sure that he was the assailant (Tr. 18). Eugene Sisco testified at trial that, at the array, he could identify defendant's photo "just a little" (Tr. 86); and that he testified at [the] preliminary hearing that he could not picture the face of the assailant (Tr. 39). The prosecuting officer testified that he was provided with two different descriptions of the assailant (Tr. 48). (Appellant's Brief at 11–12)

Counsel concludes that the identification issue is of arguable merit and there is no reasonable basis for prior counsel's failure to raise it previously. We think otherwise.

Just as counsel for the appellant has pointed out instances where the victim and her son varied their accounting of the identification factors leading to their belief that the appellant was at fault, it is beyond cavil that the jury was cognizant of the same information.

Notwithstanding all of the aforementioned, the jury, whose function it was to assess the credibility of the witnesses, obviously believed the Siscos' in-court identification of the appellant as the guilty party. We will not invade the province of the jury and attempt to second-guess their decision for such is not the function of an appellate tribunal. *See Commonwealth v. Council*, 491 Pa. 434, 421 A.2d 623 (1980); *Commonwealth v. Kloiber*, 378 Pa. 412, 425, 106 A.2d 820, 827 (1954) ("... a weak identification, together with other evidence in the case, may be sufficient to convince a jury of the defendant's guilt beyond a reasonable doubt—the credibility of the witnesses and the weight to be given their identification is, under proper instructions from the Court, exclusively for the jury." (Footnote omitted) (Citations omitted)).

■ We observe that at trial the victim recounted becoming scared and freezing for 2–3 minutes during the 5–10-minute ordeal in which she spoke to the assailant and observed him from the waist up from her position behind the window counter at approximately 4:30 p.m. on the 4th of August, 1979. After she had retrieved the coins from a box below the window counter she was shot in the right arm as she was reaching for the rest of the money. Likewise, the victim's son was inside the booth and witnessed the shooting. He too admitted to freezing for a few minutes during the episode, but he did get a good look at the assailant after his mother was shot and lay bleeding on the floor when the robber attempted to enter through the side, glass door.

Also, there was testimony from an employee (Angela Roach) at a Kentucky Fried Chicken, located about ½ block from the self-service gas station, placing the appellant (whom she knew) in the vicinity during the robbery carrying or wearing a "red" item. This was relevant since Eugene Sisco recalled that the assailant had the gun, with which his mother was shot, under a "red" sweater.

We cannot emphasize enough the commendable job done by defense counsel in his efforts to undermine the credibility of the Siscos, and, thus, cast their identification testimony in an unfavorable light; e.g.:

1) The Siscos described the assailant as having his hair in "tight braids"; yet, the police noted that a few hours after the appellant's arrest his hair, on the night in question, was not braided.

2) Eugene Sisco stated he selected the appellant's photo a few days after the incident and that he "could identify him just a little ... [b]y his face." However, he conceded that at the preliminary hearing he could not picture the assailant's face.

3) Eugene Sisco testified at the preliminary hearing that the assailant had a striped shirt, but at trial he said he meant to say checkered.

4) The victim stated at one point in her cross-examination that she viewed her assailant for "a matter of sec-

onds". This was changed on re-direct examination to "a little bit more" than 2 minutes.

5) The victim selected the appellant's photograph 10 days after the incident, but she "wasn't sure at that time." She also admitted to telling several people in the community that the name "Nelson" sounded like that of someone she went to school with.

6) Eugene Sisco gave the assailant's height as 5' 4"; appellant's is 5' 9".

7) Both the victim and the son recalled separate features of the assailant; e.g., son stated he wore blue jeans and the victim described him as having a mustache.

In a similar context our Supreme Court has observed that:

This Court has repeatedly held that it is within the sole province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. Here, the jury chose to believe the Commonwealth witness. The fact that he was unable to identify appellant at the lineup is relevant to only the weight and credibility of his testimony. The trial court carefully instructed the jury concerning the credibility of eyewitness identification, and no exceptions were taken to that portion of the charge. In these circumstances, we find no basis for disturbing the jury's determination. (Citations omitted)

*Commonwealth v. Davis, supra,* 466 Pa. at 113, 351 A.2d at 647.

■ Instantly, the victim and her son, along with the employee from Kentucky Fried Chicken, gave an accounting of the circumstances surrounding their opportunity to observe the appellant and allowed the jury to digest fully the underpinnings of their identification testimony. *See Commonwealth v. Tate,* 229 Pa.Super. 202, 323 A.2d 188 (1974). Thus, because of trial counsel's thorough cross-examination, the jurors knew about the shortcomings in each witness' testimony. It was the jurors' proper role, therefore, to determine the weight that each witness' in-court identification deserved. *See Commonwealth v. Floyd,* 494 Pa. 537,

544, 431 A.2d 984, 988 (1981) ("... the witness ... was not able to positively [sic] identify appellant but merely stated that he resembled the shooter.... The learned trial court properly permitted the jury to consider this witness's trial testimony and make its own judgment as to the weight it was to be given."); *see also Parks v. United States*, 451 A.2d 591, 604 (D.C.App.1982).

■■ We find no impropriety on the part of the court below in allowing the in-court identification testimony of the Siscos, since the facts clearly indicate that the identification was reliable and independently based and, thus, not tainted by the events of the uncounselled photographic arrays. Accordingly, trial counsel will not be held to be ineffective for failing to raise an issue ruled to be baseless. *See Commonwealth v. Davis*, 313 Pa.Super. 355, 459 A.2d 1267 (1983). Nor will this Court, as noted earlier, engage in a re-evaluation of the witnesses' credibility. *Commonwealth v. Council, supra; see also Commonwealth v. Silver*, 499 Pa. 228, 452 A.2d 1328 (1982).

■ Appellant's second claim is equally meritless for counsel will not be labelled inept for not requesting that the court charge the jury that the Commonwealth had the burden of proving by clear and convincing evidence that the identification testimony had a basis independent of the allegedly tainted pre-trial photo-arrays.

■ The trial court painstakingly reviewed with the jury its obligation to review the evidence and return a verdict of guilty only after being satisfied beyond a reasonable doubt that the appellant's participation had been established. In particular, the court mentioned certain matters which should be considered in evaluating the Siscos' identification testimony; *viz.*:

Whether the testimony of the identification witness is generally believable; whether the witness had opportunity to observe a sufficient period of time to allow them to make accurate identification; how the identification was arrived at. [sic] In other words, what were the circum-

stances under which the identification was made? All circumstances indicating whether or not the identification was accurate, and whether the identification testimony is supported by other evidence. You must consider all of these matters in deciding whether you can accept the identification testimony as being accurate.

The trial court went on to state:

Now, in determining credibility, which is really believability, how do you know what factors you consider? Well, some of them are these: Whether or not a witness has any interest in the outcome of the case. Another factor is the demeanor of the witness on the witness stand. Another is the ability and opportunity of a witness to acquire knowledge and to observe matters which are of the utmost importance in that particular situation. Another is the consistency or inconsistency of the testimony. Another is whether or not there is corroboration for the testimony given. You must weigh all of these matters in determining what really did happen and who was involved on this date in August of 1979.

Suffice it to say, although the Commonwealth bears the burden of establishing by clear and convincing evidence that an independent basis for an in-court identification exists separate from a tainted pre-trial identification, *see Commonwealth v. Connolly*, 478 Pa. 117, 385 A.2d 1342 (1978), *this is not a standard to be utilized by a jury in assessing an accused's guilt.* Rather, it is the yardstick against which *the court* gauges the Commonwealth's proof in establishing the admissibility of identification testimony. This determination takes place, preferably, at the pre-trial (suppression) stage so as to decide in advance of trial whether the trier of fact should be exposed to such evidence. Nonetheless, it is not uncommon for the denial of such a claim to be argued in post-verdict motions and on appeal. *See, e.g., Commonwealth v. Jones*, 324 Pa.Super. 359, 361, 471 A.2d 879, 880 (1984); *Commonwealth v. Green*, 321 Pa.Super. 246, 467 A.2d 1346 (1983); *Commonwealth v. Diggs*, 260 Pa.Super. 349, 394 A.2d 586 (1978).

Appellant's argument, having no support except in the self-serving statements of appellate counsel, is found wanting and is denied.

Appellant frames the third averment as a sentencing question contending that the offenses of aggravated assault and simple assault merged with his robbery conviction and trial counsel was ineffective for not raising the issue sooner. We agree in part.

 To start with, no sentence was ever entered by the court below (be it concurrent or consecutive) for appellant's conviction of simple assault. Thus, since one can only appeal from a judgment of sentence and not a conviction, *see Commonwealth v. Smith*, 322 Pa.Super. 389, 469 A.2d 676 (1983), that portion of appellant's appeal dealing with the conviction for simple assault is frivolous and will be denied. *Commonwealth v. Bey*, 504 Pa. 284, 290 n. 5, 472 A.2d 1062, 1065 n. 5 (1984). However, the same cannot be said for aggravated assault. Even though the sentencing issue was not raised previously, it is not waived, *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976), and, in fact, could be addressed *sua sponte*. *See Commonwealth v. Gilliam*, 302 Pa.Super. 50, 448 A.2d 89 (1982). No less is this the case because the sentence entered was to be served concurrently with that imposed for robbery. *Cf. Commonwealth v. Elias*, 394 Pa. 639, 149 A.2d 53 (1959) (Suspended sentence is appealable).

In deciding whether the aggravated assault merged with the robbery conviction, "[t]he true test ... is ... whether one crime necessarily involves another...." *Commonwealth v. McCusker*, 363 Pa. 450, 457, 70 A.2d 273, 276 (1950), *citing Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A.2d 920 (1941).

 Applying the doctrine of merger to the case at bar, we see that those facts which proved the elements for robbery, i.e., the infliction of serious bodily injury when the appellant shot Mrs. Sisco in the arm in the course of a theft (18 Pa.C.S.A. § 3701(a)(1)(i)), also established a violation of

the aggravated assault statute, i.e., causing seriously bodily injury to Mrs. Sisco, intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life (18 Pa.C.S.A. § 2702(a)(1)). Accordingly, given the facts instantly, the court below erred in sentencing the appellant on both robbery and the lesser included offense of aggravated assault.

We need not remand for resentencing, however, because by imposing concurrent terms for the merged offenses, the court below indicated that it regarded this case essentially as one of robbery in which the other sentence did not influence its sentencing for the principal crime. *See Commonwealth v. Moore*, 300 Pa.Super. 488, 493, 446 A.2d 960, 963 (1982). Consequently, we will merely vacate the sentence for aggravated assault while affirming the one for robbery.

The fourth and fifth questions to be dealt with concern appellant's assertion that trial counsel was ineffective for failing to call Teri Taylor, his sister, and Bonita Humphrey in his defense. The two would have testified, supposedly, that the victim told each that "she did not know who committed the offense in question."

At the PCHA hearing, trial counsel stated he decided not to call Taylor and Humphrey as witnesses because he felt he had already "put holes into the testimony of Mrs. Sisco and her son." We agree that trial counsel's vigorous cross-examination of the victim and her son highlighted what flaws existed in the prosecution's case. Thus, counsel will not be held derelict for failing to pursue a course which would not have offered a potential for success substantially greater than the one actually followed. *See Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605 n. 8, 235 A.2d 349, 353 n. 8 (1967).

The last of appellant's complaints relates to trial counsel's failure, who was the same attorney who initially appealed to this Court, to petition for allowance of appeal with the Supreme Court of Pennsylvania.

The reasons given by trial counsel for not filing the petition appear of record:

> I told him [the appellant] that the Petition for allowance of appeal to the Supreme Court on this type of case, I didn't feel there was any merit to it. It had already been turned down by the Superior Court and this is the kind of issue the Supreme Court would not hear.... I advised him at that time to pursue a post conviction petition alleging [the Taylor and Humphrey witness matter] ... as probably new evidence.... (PHCA Hearing Tr. at 23)

Appellant confirmed prior counsel's position and the reason for not appealing further when he testified: "He [counsel] put it blunt and told me I couldn't, you know, I couldn't file for an appeal anymore. He said it's time to go to jail." (PCHA Hearing Tr. at 14) We believe that the aforesaid negates any possibility that the appellant's decision not to file an allowance of appeal was knowingly, intelligently and voluntarily made. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Commonwealth v. Porta,* 297 Pa.Super. 298, 443 A.2d 845 (1982) (POPOVICH, J.). Also, it is contra the stance taken by our Supreme Court, which, in a similar situation, has stated:

> In dismissing the present petition, the court below relied in part on the conclusion of counsel appointed on the nunc pro tunc petition that an appeal was not warranted. The court concluded, therefore, that appellant had been afforded his day in court and that no deprivation had occurred by reason of his failure to obtain appellate review. We do not agree.

> It is not our impression that the *Douglas* [*v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)] decision was intended merely to replace counsel for the courts as a screen to determine which cases have sufficient merit to warrant the appointment of counsel for the prosecution of an appeal. In our view, the mere fact that counsel did not consider appellant's prospects on appeal as favorable was not of itself sufficient grounds for holding that appellant's constitutional right to the assist-

ance of counsel on appeal had been fully satisfied. That right embodies more than the right to the assistance of counsel in "meritorious cases"; it embodies the right to representation on appeal if the defendant so desires, whatever the prospects of success may appear to be to the court or counsel. As this Court pointed out in *Commonwealth ex rel. Cunningham v. Maroney*, 421 Pa. 157, 160, 218 A.2d 811, 813 (1966), "[h]ad appellant the funds with which to retain counsel, we do not doubt that he would have been able to indulge his grievances, real or fanciful, on appeal. Appellant was entitled to no less." *Commonwealth ex rel. Newsome v. Myers*, 422 Pa. 240, 243, 220 A.2d 886, 888 (1966).

Instantly, from our reading of the record, there is little doubt that *trial counsel decided* that a petition to the Supreme Court would be meritless and he so informed appellant, who took no action thereafter until he filed the PCHA petition being reviewed here.

Aside from the fact that a defendant is entitled to representation at each stage of the appellate process (*see* Pa.R.Crim.P. 316(c)(iii)), it is for the accused and not his counsel to decide whether to pursue an appeal. *Cf. Commonwealth v. McCandless*, 301 Pa.Super. 128, 133, 447 A.2d 275, 278 (1982) ("Whether to adopt [counsel's] strategy by withdrawing the appeal ... was not a decision for appellant's parents but for appellant."). This did not occur here. On the contrary, appellant was told he "couldn't file an appeal anymore" following his initial appeal to the Superior Court. A point which was testified to by appellant and not refuted by trial counsel, who, interestingly enough, took the stand after appellant at the PCHA hearing. We find such conduct on the part of prior counsel to be tantamount to ineffective assistance. *See Commonwealth v. West*, 334 Pa.Super. 287, 482 A.2d 1339 (1984).

Based on the preceding, we reverse the order of the PCHA court. Judgment of sentence as to appellant's aggravated assault conviction is vacated and appellant is granted leave to file a petition for allocatur *nunc pro tunc*

to the Supreme Court of Pennsylvania. The court below is directed to appoint counsel to assist appellant in filing such a petition, which is to be filed within 30 days of the appointment of counsel. The case is remanded for proceedings not inconsistent with this opinion. Jurisdiction is relinquished.

Order affirmed in part and reversed in part.