**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Sekou CLARK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1999.
Filed Jan. 19, 2000.

**1130**

Aaron C. Finestone, Philadelphia, for appellant.

Jennifer Dayok, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, DEL SOLE, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, MUSMANNO, ORIE MELVIN and LALLY-GREEN, JJ.

HUDOCK, J.:

¶ 1 We granted *en banc* review in this case, *sua sponte,* to address the question of the appealability of a conviction where no penalty has been imposed. Appellant was convicted of two counts each of possession with intent to deliver a controlled substance and criminal conspiracy.[1] The trial court sentenced him to concurrent terms of imprisonment for each count of possession with intent to deliver a controlled substance, but found him "guilty without further imposition of sentence" on the conspiracy counts. (N.T., 10/9/97, at 75)

¶ 2 Before the three-judge panel assigned to hear the appeal, the Commonwealth contended that since Appellant received no sentence on the two conspiracy counts, those convictions could not be reviewed on appeal and cited several cases

from this Court in support, such as, *Commonwealth v. Giddings,* 454 Pa.Super. 524, 538, 686 A.2d 6, 14 (1996), *appeal denied,* 548 Pa. 644, 695 A.2d 784 (1997) (holding that since appellant received no additional sentence on the criminal mischief conviction he is entitled to no relief); *Commonwealth v. Nelson,* 337 Pa.Super. 292, 305–07, 486 A.2d 1340, 1347 (1984) (holding that one can only appeal from a judgment of sentence and not a conviction; arguments concerning convictions for which no sentence was imposed are frivolous); and *Commonwealth v. Smith,* 322 Pa.Super. 389, 394–96, 469 A.2d 676, 679 (1983) (holding that where no sentences were imposed for certain convictions, those offenses were not properly before Superior Court). The Commonwealth also cited *dicta* from our Supreme Court in a footnote in *Commonwealth v. Ford–Bey,* 504 Pa. 284, 290, n. 5, 472 A.2d 1062, 1065, n. 5 (1984) (the argument that appellant should not have been convicted of both attempted murder and recklessly endangering another person because the latter crime merges into the former for purposes of sentencing is "... wholly frivolous in view of the fact that no sentence was ever imposed for recklessly endangering another person.").

■ ¶ 3 It is elemental that a criminal appeal is taken from a judgment of sentence and not from the underlying conviction. *Commonwealth ex. rel. Holly v. Ashe,* 368 Pa. 211, 216–18, 82 A.2d 244, 247 (1951). The question is whether the failure to assess a penalty for a conviction is a "sentence" for purpose of appeal.

■ ¶ 4 The Commonwealth now concedes that a determination of guilt without further imposition of penalty is a valid judgment of sentence under the Sentencing Code and constitutes a final appealable order. Our Supreme Court has so held in *Commonwealth v. Rubright,* 489 Pa. 356, 361–63, 414 A.2d 106, 109 (1980), and this Court has followed this principle. *See e.g.*

---

**1.** 35 P.S. § 780–113(a)(30) and 18 Pa.C.S.A. § 903, respectively.

*Commonwealth v. Smith*, 451 Pa.Super. 192, 194–96, 678 A.2d 1206, 1207 (1996) ("A determination of guilt without further imposition of penalty constitutes a final, appealable order."). However, the Commonwealth now argues that for a conviction to be appealable the sentencing court must expressly state that no further penalty is being imposed; simply failing to impose a penalty, the Commonwealth contends, will not suffice. We reject such a distinction and now hold that where a sentencing court expressly or by implication indicates that no penalty is to be imposed after conviction, that action is a "sentence" which will support an appeal.

¶ 5 Our Sentencing Code provides as follows:

**§ 9721. Sentencing generally.**

(a) **General rule.**—In determining the sentence to be imposed the court shall ... consider and select one or more of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.

(2) **A determination of guilt without further penalty.**

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

(6) Intermediate punishment.

42 Pa.C.S.A. § 9721(a) (emphasis added).

¶ 6 The Legislature has thus made it clear that a determination of guilt without further penalty is a "sentence" for purposes of appeal. Were it otherwise, as Appellant points out, Article 5, Section 9 of the Pennsylvania Constitution would be overridden. ("... and there shall also be a right of appeal from a court of record ... to an appellate court[.]") A person could be convicted of a heinous crime, such as child sexual assault, after a manifestly unfair trial, and so long as no sentence was

imposed on that particular count, no redress would be available. His reputation would be ruined, his conviction would be counted in any prior record score computation for any subsequent sentencing, and other collateral consequences could ensue, such as denial of financial assistance for higher education to students who are convicted of a misdemeanor involving moral turpitude or a felony (24 P.S. section 5158.2(1)), or denial of entry into a state-approved nurse's aide training program because of certain convictions (63 P.S. section 675).

¶ 7 We expressly overrule any statements in *Giddings, supra, Smith, supra,* and *Nelson, supra,* which suggest that where a sentencing court imposes no penalty after a conviction, the conviction is not appealable.

¶ 8 We now turn to the merits of the appeal.

¶ 9 The facts and procedural history can be summarized as follows: Appellant's convictions arose out of two separate incidents.[2] At approximately 3:15 p.m. on December 2, 1996, a Philadelphia Police Department Local Intensive Narcotics Enforcement (LINE) Unit began a surveillance operation centering on the 5100 block of Market Street in the City of Philadelphia. The LINE Unit was responding to numerous reports of drug trafficking activity in the area of 51st and Market Streets.

¶ 10 Officer Nikki Jones directed the surveillance from a confidential location. Officer Jones testified that she observed Appellant and his accomplice, Corey Days, standing on the northwest corner of the intersection between 51st and Market Streets. While she watched for fifteen to twenty minutes, three different males approached Appellant. Each of these passersby stopped and gave the accomplice of

2. As the caption suggests, Appellant was tried as a result of three different incidents occurring on December 2 and December 29, 1996, and January 23, 1997. Because Appellant

was acquitted of the charges stemming from the December 29th incident, however, those charges are not before us on appeal.

Appellant United States (US) currency. The accomplice then turned to Appellant and said something. Appellant proceeded to walk to an abandoned lot about one-half block away. Once on the lot, Appellant went to a tree surrounded by high weeds. At the tree, he bent over for a few seconds. Appellant then returned to the street corner, where he passed some items to the passersby. Officer Jones testified that, even using binoculars, she could not determine what was being handed to the individuals.

¶ 11 Each time after the exchange occurred, backup officers attempted to stop the passersby once they had left the immediate area. Eventually, the backup officers stopped the third passerby. As they approached this person, he dropped several packets of a white substance that appeared to be rock cocaine. Consequently, the LINE Unit decided to arrest Appellant. While the backup team secured Appellant, Officer Nikki Jones left her surveillance location and went to the tree on the abandoned lot. At the base of the tree, she discovered a deodorant case containing twenty small plastic packets and a larger clear plastic bag holding forty small packets. Each of the smaller packets had been filled with a white chunky substance and all were similar to the packets recovered from the third passerby. These packets later tested positive for cocaine.

¶ 12 The second incident occurred on January 23, 1997. At 4:30 p.m. on that date, the LINE Unit set up surveillance at the intersection of 46th and Sansom Streets in Philadelphia. In this case, Officer Myra Malvo directed the surveillance, with Officer Jones assisting her. Their surveillance location was from inside a vehicle approximately forty feet from the corner of the intersection where Appellant and his accomplice stood. Despite the late hour, the officers could see clearly because they were using binoculars and because the corner where Appellant and his accomplice stood was well lit by streetlights.

¶ 13 Again, Appellant and his accomplice, Malik Johnson, were approached by three people. The first person approached in a burgundy car. The auto stopped at the corner and Appellant and his accomplice walked over to the vehicle. Appellant then reached inside his pocket and handed something into the car. Officer Malvo could not see inside this car because the windows were darkly tinted. The car then drove away.

¶ 14 Next, a black Chrysler New Yorker pulled up to the curb at the corner. The driver of this car parked, got out of the auto and walked over to Appellant and his accomplice. At that point, he gave the accomplice U.S. currency. Appellant then walked about twenty to thirty feet away, to a lawn area near 4543 Sansom Street. There, he bent over for a short period of time. Appellant returned to the corner and gave the driver of the New Yorker some small items. Officer Malvo then relayed a description of the driver and his car to her backup officers, who executed a stop of the driver and recovered narcotics in small tinted packets.

¶ 15 While these officers were waiting for a marked police car to come and transport the driver to the station, Officer Malvo observed a third individual approach Appellant and his accomplice on foot. This time, the person handed currency directly to Appellant. Appellant again went to the lawn area, returned, and gave the individual some small items.

¶ 16 At this point, the LINE Unit chose to apprehend Appellant. While he attempted to flee, he was stopped and arrested. Officer Jones then went to the lawn area where she discovered a brown bag. She further found ten tinted packets inside the bag. These packets matched those recovered from the driver of the black New Yorker. The substance inside the packets tested positive for cocaine.

¶ 17 As a result of these incidents, Appellant was charged as noted above. Two separate suppression hearings were held. The trial court denied suppression in both

instances. After the charges were consolidated for trial, a jury found Appellant guilty of the above-stated offenses. The trial court sentenced Appellant to serve a three to six-year term of imprisonment on one count of possession with the intent to deliver and a concurrent one to two-year term on the other count of possession. The court did not impose an additional penalty for the two counts of criminal conspiracy. This appeal followed.[3]

¶ 18 Appellant raises three questions for our review:

1. Did the Suppression Court err in denying the motion to suppress?

2. Did the Trial Court err in prohibiting defense counsel from questioning a police officer about the confidential location of the surveillance?

3. Was the verdict based on insufficient evidence?

Appellant's Brief at 4.

¶ 19 Appellant first challenges the trial court's denial of his motions to suppress the drugs recovered from the weeded lot on December 2, 1996, and from the lawn area on January 23, 1997. On appeal from the denial of a defendant's motion to suppress, this Court applies the following standard of review:

[O]ur role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Rosario*, 438 Pa.Super. 241, 262–64, 652 A.2d 354, 365 (1994) (*en banc*) (quoting *Commonwealth v. Foster*, 425 Pa.Super. 61, 65–67, 624 A.2d 144, 147 (1993)).

¶ 20 Before both the suppression court and this Court, Appellant advances an argument based on the "fruit of the poisonous tree" doctrine. Essentially, he contends that, based on the surveillance alone, the police could not have developed either reasonable suspicion or probable cause that he was trafficking in drugs because they could not see what was being exchanged to the passersby or drivers who approached the corners where he had stood. Moreover, he maintains, the Philadelphia Police Department's reputation for brutality and planting of false evidence gave him a legitimate reason to flee the approaching officers. We disagree.

¶ 21 Before Appellant can challenge the seizure of the packets of cocaine, he must demonstrate that he had both a possessory interest in the packets and a legally cognizable expectation of privacy in the weeded lot and lawn area. *Commonwealth v. Pizarro*, 723 A.2d 675, 679 (Pa.Super.1998). As this Court has stated:

As a general principle, the Fourth Amendment requires that law officers obtain a warrant issued by a neutral magistrate before they intrude into a place of privacy. However, [an] exception to the warrant requirement exists when the property seized has been abandoned. In *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216 (1976), our Supreme Court delineated the test employed to determine whether an abandonment has occurred:

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be con-

**3.** At trial, Appellant was represented by J. Scott O'Keefe, Esquire. While Attorney O'Keefe filed the notice of appeal in this mat-

ter, he then withdrew in favor of Appellant's current counsel, Aaron Finestone, Esquire.

sidered. The issue is not abandonment in the strict property-right sense, *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.*

*Id.*[,] 469 Pa. at 553, 366 A.2d at 1220 (emphasis added).

*Commonwealth v. Johnson*, 431 Pa.Super. 291, 294–96, 636 A.2d 656, 658 (1994) (quotation marks and some internal citations omitted). In other words, "[a]bandonment can be established where an individual's surrender of possession of the property constitutes such a relinquishment of interest in the property that a reasonable expectation of privacy may no longer be asserted." *Johnson*, 636 A.2d at 658–59.

¶ 22 The facts of *Johnson* are very similar to those of the instant case. In *Johnson*, the police received an anonymous tip that a black male wearing a red baseball cap was selling drugs in a neighborhood park. The police set up surveillance of the park and watched as a male individual approached a man fitting the description from the anonymous tip. Both men then walked about ten to twelve feet into the park. At that point, the man in the red hat reached into a tree and pulled down a brown plastic bag. He then allowed his prospective "customer" to look into the bag. The men conversed for a moment, then the bag was returned to its perch in the tree. The men proceeded to part and go separate ways, the one in the red hat returning to his original post in the park. Police officers conducting the surveillance then entered the park. One officer secured the man in the red hat while another checked the bag in the tree. The second officer then signaled the first that he had found drugs in the bag.

¶ 23 The hatted man was charged with possession with the intent to deliver and sought to suppress the drugs found in the

bag. The trial court granted the suppression motion and the Commonwealth appealed. A panel of this Court reversed, holding that the warrantless search and seizure were proper because the defendant "effectively abandoned any reasonable expectation of privacy in the bag" of drugs by placing it in the tree. *Johnson*, 636 A.2d at 659.

 ¶ 24 Likewise in the instant case, the facts as adduced at the suppression hearings show that on both December 2, 1996, and January 23, 1997, Appellant placed his supply of drugs for sale in a public location—the weeded lot or lawn area—some distance away from where he had actually negotiated and delivered the narcotics—the street corner. Appellant's decision to hide the seized drugs in public areas establishes that he effectively abandoned any reasonable expectation of privacy in them. Consequently, Appellant had no standing to challenge the search and seizure of the drugs. *See Commonwealth v. Tillman*, 423 Pa.Super. 343, 346–47, 621 A.2d 148, 150 (1993) (holding that defendants have no standing to challenge the seizure of items voluntarily abandoned).

 ¶ 25 Moreover, the record does not support Appellant's bald allegation that he abandoned the drugs as a result of police coercion. Here, Appellant strategically placed the drugs on the weeded lot and the lawn area long before members of the LINE Unit approached his sales corner. Thus, he cannot claim that the approach of the officers caused him to abandon the drugs. *Id.* Therefore, we affirm the suppression court's denial of Appellant's motion. *See Commonwealth v. Harper*, 416 Pa.Super. 608, 613, 611 A.2d 1211, 1213 n. 1 (1992) (stating that this Court may affirm a decision of the trial court if there is any basis on the record to support the trial court's action).

¶ 26 Appellant next argues that the trial court erred when it permitted the Commonwealth to keep confidential the site from where the LINE Unit conducted its

surveillance on December 2, 1996. Appellant claims that without this information, his trial counsel could not adequately question Officer Jones regarding her lines of sight. Appellant further contends that the non-disclosure of the confidential location could allow the Commonwealth to lie without consequence.

¶ 27 Our Supreme Court has explained that confidential surveillance sites should be disclosed under the following circumstances:

> [W]henever the Commonwealth asserts that a surveillance location is confidential, the defendant bears the initial burden of demonstrating that disclosure is necessary to conduct his defense. The Commonwealth would then have to come forward and explain the reasons why confidentiality must be preserved. At that point, the trial court must balance the relevant factors set forth by the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53 [77 S.Ct. 623, 1 L.Ed.2d 639] (1957), in order to determine whether the Commonwealth's interest in protecting the confidentiality of the surveillance location outweighs the defendant's need for the information as it relates to his ability to adequately defend against the pending criminal charges.

*Commonwealth v. Rodriquez*, 543 Pa. 651, 658–59, 674 A.2d 225, 229 (1996) (parallel citations omitted) (emphasis added); *see also* Pa.R.Crim.P. 305(B)(2)(d). The Court cautioned, however, that the *Roviaro* balancing test is triggered only when a defendant presents the trial court with "a specific claim of necessity for disclosure of the exact location[.]" *Rodriquez*, 674 A.2d at 229.

¶ 28 In *Rodriquez*, the Court held that the defendant had not sufficiently established that it was necessary for him to know the exact location of the surveillance site. The Court noted that the trial court had allowed defense counsel to cross-examine the officer who conducted the surveillance based upon available information, including the fact that the location was one hundred feet north of a specified intersection, approximately ten to twenty feet above street level. Moreover, other testimony established that a basketball court was between the surveillance location and the area the officers were watching. Because such information was available to defense counsel, our Supreme Court held that counsel was able to conduct an effective cross-examination of the officer.

¶ 29 Instantly, we initially note that Appellant does not specifically state why a detailed disclosure of the location of the exact confidential surveillance site was necessary for his defense. Consequently, we could deny Appellant's claim on that basis alone. *Rodriquez, supra.* However, the notes of testimony from Appellant's trial also demonstrate that the trial judge allowed defense counsel to ask a number of questions regarding the clarity of Officer Jones' lines of sight from the confidential site. Consequently, defense counsel was able to adequately cross-examine Officer Jones regarding her ability to see clearly.

¶ 30 From defense counsel's questioning, the jury learned that Officer Jones conducted her surveillance in a vehicle parked approximately twenty to thirty feet away from the corner where Appellant had stood with his accomplice on December 2, 1996. Counsel also elicited from Officer Jones the fact that she had used binoculars and that at least one building had momentarily blocked her view when Appellant first entered onto the weeded lot. The officer also explained that, while her view was generally unimpaired, she could not see exactly what Appellant did while he was bent-over at the base of the tree or what he handed to the passersby when he returned from the lot.

¶ 31 Therefore, because these facts allowed defense counsel to conduct an adequate and complete cross-examination of Officer Jones, and because Appellant failed to meet his initial burden of demonstrating that disclosure of the exact location of the

confidential surveillance site was necessary for his defense, the trial court did not err when it denied Appellant's disclosure request.

¶ 32 Finally, Appellant contends that the Commonwealth presented insufficient evidence of his guilt as to all counts.

¶ 33 In reviewing the sufficiency of the evidence, this Court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the crime charged beyond a reasonable doubt. *Commonwealth v. Webster*, 452 Pa.Super. 258, 260–62, 681 A.2d 806, 808 (1996).

¶ 34 Appellant was charged with possession of drugs found on a weeded lot (December 2, 1996) and on a lawn area in front of a house (January 23, 1997). When the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth must establish that the defendant had constructive possession of it. *Commonwealth v. Haskins*, 450 Pa.Super. 540, 543–45, 677 A.2d 328, 330 (1996). Our Supreme Court has defined constructive possession as the power to control the contraband and the intent to exercise that control. *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992). Constructive possession can be proven by circumstantial evidence and the "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." *Haskins*, 677 A.2d at 330.

¶ 35 Appellant contends that the Commonwealth did not establish that he constructively possessed the drugs taken from the lot and the lawn area. Because the drugs were found in a public area, he asserts that some unidentified individual, or the police officers themselves, could have placed the drugs in those two locations. Moreover, Appellant reminds this Court that a mere association with persons found to be carrying or selling drugs will not sustain a conviction for possession of narcotics.

¶ 36 Appellant's argument ignores the facts of his case. On December 2, 1996, the surveillance was conducted by Officer Jones, an experienced officer who had spent four years with the LINE Unit and had conducted over one hundred surveillance operations. Over a period of about fifteen to twenty minutes, Officer Jones observed three individuals approach Appellant and his accomplice, Corey Days. After each of these individuals handed money to Appellant or Days, Appellant walked onto the weeded lot and stopped at the base of the tree. Appellant then returned and handed something small to the passerby. One of these passerby was arrested by backup officers. They discovered that he was carrying packets of rock cocaine. These packets matched those recovered from the base of the tree by the LINE Unit.

¶ 37 On January 23, 1997, the surveillance team was led by Officer Malvo, a three and one-half year veteran of the LINE Unit who had handled 100 to 150 surveillance operations. On that date, Officer Malvo observed Appellant and his accomplice for approximately forty minutes. During this time, Appellant walked to the lawn area only after passersby handed money to Appellant or his accomplice, Malik Johnson. Again, like the facts of December 2nd, one of the passersby was stopped by backup officers who discovered packets of cocaine. This time, the packets matched those found on the lawn by Officer Jones.

¶ 38 Uncontradicted testimony from Officers Jones and Malvo, therefore, establishes that Appellant was the only person who approached the weeded lot or lawn area on either day at the relevant time. Based on this testimony, we reject Appellant's claim that the Commonwealth presented insufficient evidence of his intent to control the cocaine found on the weeded lot and on the lawn area. The totality of

the circumstances gives rise to an unrebutted inference that Appellant and his accomplice were keeping their supply of drugs for sale hidden where the police found them. Therefore, given the fact that Appellant was the only person who frequented the weeded lot and the lawn area while the LINE Units conducted their surveillance, the Commonwealth presented sufficient evidence that he constructively possessed the contraband. *See Haskins*, 677 A.2d at 330.

¶ 39 These same facts also amply support the conspiracy convictions. Where the conduct of the parties indicates they were acting in concert with a corrupt purpose in view, the existence of a conspiracy may be properly inferred. *Commonwealth v. Snyder*, 335 Pa.Super. 19, 36–37, 483 A.2d 933, 942 (1984). Here Appellant and either Corey Days or Malik Johnson cooperated with Appellant in the various transactions whereby drugs were exchanged for money – a clear expression of a shared criminal intent.

¶ 40 Judgment of sentence affirmed.